UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:18-CV-21365-KMW

ST. LOUIS CONDOMINIUM
ASSOCIATION INC.

       Plaintiff,

vs.

ROCKHILL INSURANCE COMPANY,

       Defendant.

_____/

**PLAINTIFF'S SUPPLEMENTAL EXPERT WITNESS DISCLOSURE PURSUANT TO
FLORIDA RULES OF CIVIL PROCEDURE 26(a)(2)**

      Plaintiff, St. Louis Condominium Association, Inc. ("Plaintiff"), pursuant to Federal Rule

of Civil Procedure 26, Local Rule 26.1 and the Scheduling Order, hereby discloses the following

persons as experts expected to testify on its behalf at trial, as follows:

    1.     William J. Pyznar, P.E.
           The Falcon Group Engineering, Architecture & Energy Consultants
           7430 SW 48th Street
           Miami, Florida 33155

      The Plaintiff expects to call Mr. Pyznar as expert witness at trial to present evidence

under Federal Rule of Evidence 702, 703, and 705.  Mr. Pyznar's report, curriculum viate,

compensation, list all publications he has authored in the ten (10) years and all litigation in which

he offered testimony in the last four (4) years was previously produced on September 28, 2018.

    2.     Paul E. Beers
           GCI Consultants, LLC
           2460 Metrocentre Boulevard
           West Palm Beach, Florida 33407

The Plaintiff expects to call Mr. Beers as expert witness at trial to present evidence under Federal Rule of Evidence 702, 703, and 705.  Mr. Beers' report, curriculum viate, compensation, list all publications he has authored in the ten (10) years and all litigation in which he offered testimony in the last four (4) years was previously produced on September 28, 2018.

> 3.      Hector Torres
>         DLT Global Development & Building Advisors
>         3470 North Miami Avenue
>         Upper Suite
>         Miami, Florida 33127

The Plaintiff expects to call Mr. Torres as expert witness at trial to present evidence under Federal Rule of Evidence 702, 703, and 705.  Mr. Torres' report, curriculum viate, compensation, list all publications he has authored in the ten (10) years and all litigation in which he offered testimony in the last four (4) years was previously produced on September 28, 2018.

> 4.      Mark J. Mintz, Esq.
>         Mintz Truppman
>         1700 Sans Souci Boulevard
>         North Miami, Florida 33181

The Plaintiff expects to call Mr. Mintz as expert witness at trial to present evidence under Federal Rule of Evidence 702, 703, and 705.  We anticipate calling Mr. Mintz as an expert in industry standards for pre-litigation and litigation conduct.  Mr. Mintz's curriculum viate and compensation was previously produced on September 28, 2018. Mr. Mintz's expert report including all litigation in which he offered testimony in the last four (4) years is attached hereto as **Supplemental Exhibit "A".**

> 5.      William S.  Coffman,  Jr.
>         740 S.E. Greenville Blvd.
>         Suite 400-176
>         Greenville, NC 27858

2

The Plaintiff expects to call Mr. Coffman as expert witness at trial to present evidence under Federal Rule of Evidence 702, 703, and 705. We anticipate calling Mr. Coffman as an expert in industry standards for adjusters and insurance companies. Mr. Coffman's curriculum viate was previously produced on September 28, 2018. Mr. Coffman's compensation, all litigation in which he offered testimony in the last four (4) years and expert report is attached hereto as **Supplemental Exhibit "B"**.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by electronic notification generated by CM/ECF system  on 2nd day of October, 2018 to:  Lauren D. Levy, Esq., Levy Law Group, 3399 Ponce De Leon Blvd, Suite 202, Coral Gables, Florida 33134; lauren@levylawgroup.com; Lourdes@levylawgroup.com and Jocelyn@levylawgroup.com.

Respectfully submitted,

Siegfried, Rivera, Hyman, Lerner, De La Torre, Mars, & Sobel, P.A
*Attorneys for Plaintiff*
201 Alhambra Circle
Eleventh Floor
Coral Gables, Florida 33134
Telephone: (305)442-3334
Facsimile: (305) 443-3292
sodess@srhl-law.com
dbrady@srhl-law.com

By: /s/ Susan C. Odess
    Susan C. Odess
    Florida Bar No. 99077

## EXPERT REPORT OF MARK J. MINTZ, ESQ.

The undersigned, Mark J. Mintz, Esq., is an attorney who has practiced for approximately 38 years in varied areas of Florida's civil law, specializing in first-party property insurance claims and litigation. I have been retained by the Plaintiff, St. Louis Condominium Association, Inc. ("St. Louis"), to render an opinion on various insurance industry standards issues related to the insurance claim pre-suit activities and litigation between Plaintiff and Rockhill Insurance Company ("Rockhill"). My current hourly rate and rate in this matter is $750, plus costs. My CV is available on my page at Mintztruppman.com, as is other information about me and my law firm.

The field of insurance, particularly first-party property insurance (non-auto), while not scientific, is a specialized area, with its own technical terms and standards, which are not within the common knowledge of the general public. This is particularly true as it relates to condominium, commercial and commercial residential property insurance. My opinions, herein, based upon my education, training and experience, are *directly relevant to assist the jury in determining whether Rockhill properly performed its obligations under the insurance contract at issue in accordance with generally accepted insurance industry standards, or whether it did not (in breach of the policy)*, as well as whether St. Louis did or did not do so as alleged in Rockhill's defenses and counterclaim. This will necessarily require the jury to have certain insurance industry specific policy terms, standards and practices explained. A determination of policy compliance or breach by either party necessarily requires an understanding of insurance industry specifics.

<u>Qualifications</u>

The undersigned has extensive litigation experience in various areas of Florida civil litigation, having been admitted to practice law in Florida in 1980.  I am the senior and managing partner of Mintz Truppman, P.A., one of the oldest continuing first-party property insurance litigation firms in South Florida.  For a significant portion of my career, I worked as insurance defense counsel specializing in first-party property insurance claims, and have acted as an insurance Appraiser.  Simultaneously, I also specialized in first-party insurance claims representing insureds in such cases.  Since 2006 I have only represented insureds, not insurers.  I have lectured at FAPIA conferences, and ABA events, and other venues.  I regularly consult with many of the most active and successful first-party property insurance lawyers and adjusters in South Florida.  The undersigned and my law firm, under my guidance, have many of the leading insurance appellate cases in Florida and my case of *Club West v. Tropigas* is still taught at voir dire seminars.

I am frequently consulted or hired as an insurance litigation consultant or expert witness in complex insurance claims or as an attorney's fee expert.  However, I only recall giving testimony in one case within the last four years as an expert, which is *Sans Souci v. Citizens*, Miami Dade Circuit Court Case No. 10-54803 CA 13.

<u>Summary of Opinions</u>

Rockhill engaged in conduct designed to delay and deny the insured's claim in this case to avoid paying what was and is due.  This includes Rockhill's multiple breaches of the policy and its obligations under Florida law (enforced by the Federal Court in this case), violating industry standards in investigating the claim, hiring a lawyer to serve as a conduit/adjuster for the insurance company during the adjustment of the claim, failing to pay, and taking unsupported

2

defense and litigation positions when its insured was required to file suit.

My testimony will explain the Insurance Company's violation of insurance industry standards including Rockhill's failure to properly investigate and adjust St. Louis' insurance claim, violating its obligations under the insurance contract and insurance industry standards, as well as St. Louis' alleged failure to meet its own duties under the policy.  This information is clearly not within the basic knowledge or understanding of the average lay juror. My opinions will advise of the application of the policy exclusions and duties raised by Rockhill in its defenses and counterclaim in this case, and explain how they work in real life, so a lay juror can understand.

The expected opinions based on first-party property insurance industry standards and my experience in the industry are detailed below.

Materials Reviewed

The undersigned has for review, relevant portions of the litigation file in this case, including pleadings, discovery, and the insurance policy at issue.  In addition, I have been provided pre-suit communications (letters and emails) on policy compliance issues; document production by both Rockhill (relatively nonexistent) and St. Louis; and I have discussed and reviewed various facts of this claim and case with Plaintiff's counsel because the important depositions of Rockhill's (b)(6) corporate representative and Rockhill's underwriting representative have not yet taken place.  Additionally, I have Mr. Bert Davis' deposition, which has not been concluded, and the depositions of Stephen Pesak and Philip Ambrose.  This information has been reviewed in formulating my opinions, as relevant, and additional information is expected.

Detail of Opinions

      Based on my review of the materials identified above, and discussions with Plaintiff's counsel, I am of the opinion that:

- Rockhill insured the window and door systems at the Property as part of the insured building.

- Rockhill insured the building envelope at the Property as part of the insured building.

- The issuance of the policy of insurance, with no exclusion or other indication (endorsements) that the windows and door systems and building envelope would not be covered, prevents Rockhill from denying or raising coverage defenses, including as it relates to pre-existing conditions for those items. The insurance company accepted the property in its condition as and when insured, after either inspecting or choosing not to inspect.  Failure to provide such coverage would further be fraud in the inducement and is prohibited by industry standards.

- It appears that the Insurance Company collected premiums without ever intending to provide coverage as shown by 1) Rockhill's adjuster representing that the claim exceeded the Policy's deductible in September of 2017, yet Rockhill failed to 2) write an estimate; 3) send an advance or pay for the admittedly covered damage; 4) send payment for the claim; or 5) send payment for the amount that was agreed to be above the deductible.

- St. Louis complied with all conditions precedent before filing the lawsuit or Rockhill waived any such policy compliance and St. Louis' lawsuit was not filed prematurely. The Insurance Company delayed any evaluation and then, on prompting by the insured, had multiple inspections where it could have (and did to some degree) evaluated the claim fully.

- St. Louis allowed four inspections of its Property by Rockhill's adjusters (although they apparently didn't always show up) and retained experts, which fulfilled St. Louis' duty

4

and obligation under the Policy to make the property available for inspection.  If Rockhill chose not to complete its inspection, it did so at its peril and violated industry standards.

- The four inspections that were conducted by Rockhill and Rockhill's experts allowed Rockhill to complete its investigation of the Property and the damage, within industry standards, and apparently it did so, but surely should have done so.  The request for an additional inspection is either a fabricated "need" intentionally creating delay, or based on an admission of Rockhill's prior breach in not concluding its investigation on the first four inspections.

- Rockhill's attorney served as a conduit/adjuster for the Insurance Company by participating in the adjustment process, not as an attorney.  Rockhill's lawyer is not entitled to claim attorney-client privilege, or waived attorney-client privilege at the point it engaged in the adjustment of the claim's process. Rockhill's attorney advised St. Louis' public adjuster to direct all correspondence to her office during the adjustment of the claim.

- Rockhill's counterclaim is without merit.  There is no concealment or fraud by St. Louis and such would only be a defense, not a counterclaim.  The same applies to the alleged lack of policy compliance and the counterclaim as a whole.  St. Louis chose not to ask for information and delayed its investigation unnecessarily and then is attempting to blame the insured for the Insurance Company's lack of action.  This is below industry standards. A good faith dispute in value is never fraud.  Nothing was concealed.  Rockhill simply did not make requests for information, and then complained instead of gladly accepting and evaluating the insured's documentation, since the insured did the work that the Insurance Company should have done.

- Rockhill's failure to pay for St. Louis' loss was clearly intentional and calculated to serve Rockhill's own interests at the expense of its insured. This is evidenced by the

factual circumstances and chain of events set forth above, including its invalid and improper interpretation of the policy, if claimed to support its actions/inactions. It also includes Rockhill's delay conduct towards its insured, as described above, including providing what amounted to "quasi" illusory coverage to its insured, if Rockhill didn't pay its evaluation above the deductible or refused to prepare an estimate to that end. Some facts from the Insurance Company's own witnesses, which it ignored, include:

- Cracks looked recent (Pesak deposition, pp. 80-81).
- Claim above deductible (Pesak deposition, pp. 92-93).
- Litigation not anticipated as of February 27, 2018 (Pesak deposition, p. 120).
- Damage didn't pre-date Hurricane Irma (Ambrose deposition, pp. 81 and 101).
- No estimate done yet (Ambrose September 2018 deposition, p. 57).

- Rockhill's investigation fell below the industry standard of what is required when performing inspections of insurance claims in various respects as set forth herein. There was no due regard for the insured's Hurricane Irma damages or need for repairs.

- Rockhill and its adjusters had a duty and obligation to continuously and timely communicate with St. Louis and it failed to do so and that is below insurance industry standards.

- Rockhill had an independent obligation to determine the value of damaged property and to determine the value of its repair and/or replacement. Rockhill was obligated to give notice of its intentions within thirty days of its receipt of the Sworn Proof of Loss. Failure to do so is below insurance industry standards.

- Rockhill didn't pay on the Proof of Loss or properly reject it, therefore, it accepted it. There is no such thing as an unsolicited Proof of Loss, if that's meant to mean something done wrong by insured.

- Failure to pay or deny is breach of policy and industry standards, especially not doing so within 90 days and/or 30 days after Proof of Loss, and that was the Insurance Company's

delay tactic in this matter.

- The applicable deductible is 3% of the amount of loss, subject to the $25,000 minimum per the policy, not 3% of policy limits.

- Per Mr. Ambrose, Rockhill's adjusting stopped when suit was filed. That is below insurance industry standards as the Insurance Company should have done its estimate (none done yet per deposition, dated September 12, 2018, p. 57) and made payments due regardless of suit.

- Page 17, paragraphs 9 and 10 of Rockhill's Answer and Affirmative Defenses to the Complaint and Incorporated Counterclaim for Declaratory Judgment, documents and admits the Insurance Company's delay of months which was below industry standards.

- Paragraph 12 of the Counterclaim appears nonsensical in discussing a "flood claim" when the damages to the windows and the like and related water damage would clearly be above any flood level.

- A defense of "no prompt notice," based upon the date of submission of the dollar amount of the insured's estimate (not actual late notice of the loss) is contrary to insurance industry standards.

- The defense/counterclaim for failing to permit an inspection is nonsensical given that there were four inspections, as is the failure to cooperate argument. The re-re-re-re-inspection claim is inappropriate.

- The issues addressed above are further supplemented by the Insurance Company's complete stonewalling of written discovery and deposition discovery.

- Insurance industry standards were violated when the Insurance Company sat around and didn't evaluate the claim, instead stating it relied only on its experts, when it was required to adjust the claim and cannot relegate that to experts.

The foregoing opinions will be confirmed, supplemented and potentially modified

after conclusion and transcription of all Rockhill witnesses' depositions and other witnesses referenced above, and receipt of documents from the claim file withheld by the Insurance Company.

Dated:  October 2, 2018

By: _____
Mark J. Mintz, Esquire
Mintz Truppman, P.A.
1700 Sans Souci Boulevard
North Miami, FL  33181
Telephone:  305-893-5506
mintz@mintztruppman.com

## Expert Report of William S. Coffman, Jr.

**ST. LOUIS CONDOMINIUM ASSOCIATION, INC., a Florida not-for profit Corporation**

**vs.**

**ROCKHILL INSURANCE COMPANY**

## Qualifications and Experience

I have worked in the insurance industry for over 34 years as an adjuster and loss consultant. Throughout this period, I have held key positions with Hartford Insurance and am currently an independent adjuster providing claims services to the insurance industry.  I have broad experience in claim handling and claim management and hold special expertise in the adjustment of large property claims.  Based on my experience of adjusting and advising on claims throughout the United States, I have specialized knowledge regarding the industry standards applicable to insurers and insurance adjusters.

## Background

The St. Louis Condominium Association, Inc. consists of a thirty-one (31) story building containing 134 units, flat roof systems, multi-story parking garage/parking deck, and an in-ground pool and pool deck that was constructed in 1995.[1] The condominium sustained damage from Hurricane Irma, which made landfall in the Florida Keys as a Category 4 storm on September 10, 2017. The eye of the storm tracked along the west coast of Florida reaching Naples as a category 2 storm. Winds from Hurricane Irma affected the east coast as well with a wind gust of 109 mph being recorded in Pembroke Pines, FL.[2]

St. Louis Condominium Association, Inc. retained the services of GlobalPro Recovery, Inc. to advise and assist with the presentation of their loss. GlobalPro Recovery, Inc. reported the loss to Rockhill Insurance Company on or about September 13, 2017.  Rockhill Insurance Company set up a claim and assigned Engle Martin Associates to investigate. Engle Martin Associates assigned the claim to Stephen Pesak, Executive General Adjuster.  An initial inspection by Mr. Pesak was conducted on or about September 20, 2017

From September 20, 2017 until January 16, 2018 neither Rockhill Insurance Company nor agents acting on its behalf made any requests for information or inspections.

Rockhill Insurance Company engaged the services of an engineer, Mr. Bert Davis and a building consultant, Mr. Paul Millard. An inspection (which was the second one performed on behalf of Rockhill

---

[1]  Post Hurricane Irma Engineering Evaluation of the St. Louis Condominium Association, Miami Florida, prepared by: The Falcon Group Engineering, Architecture & Energy Consultants 7430 SW 48th Street Miami, FL 33155
[2] ibid

Insurance Company) by Mr. Davis and Mr. Millard took place on or about January 31, 2018. At this inspection no adjuster attended from the insurance company despite requesting this reinspection. A third inspection occurred on February 28, 2018 and a fourth inspection occurred on March 1, 2018. These last two inspections were performed by Mr. Davis and Mr. Millard. Present during the February 28, 2018 inspection was Mr. Ambrose.[3] Also present during these inspections was the insurer's attorney Ms. Levy.[4]

At some point prior to the January 31, 2018 inspection Engle Martin reassigned the investigation of the claim to Philip Ambrose, Sr. Executive General Adjuster.

A Sworn Statement in Proof of Loss was submitted to Rockhill Insurance Company via letter dated February 13, 2018, in the amount of $16,113,648.88.

Suit was filed on or about March 5, 2018.

As of this report no denial letters have been issued, no loss less than the deductible letters have been issued and no payments (partial or full) have been made.

As of September 12, 2018, no estimates have been prepared by or on behalf of Rockhill Insurance Company.[5]


## Opinions and Conclusions

The conclusions enumerated below are general in nature and I intend to expound upon these upon questioning at my deposition. I also reserve the right to add to these opinions and form new opinions with additional or new information, such as transcripts of completed depositions of Rockhill Insurance Company's adjuster, corporate representative, underwriting representative, plaintiffs Public Adjuster and Rockhill Insurance Company's "expert" who inspected the property.

Nowhere in the insurance policy issued by Rockhill Insurance Company does it instruct the insured on how to make an insurance claim. Rather they are instructed only on what they must do in the event of loss or damage:

> **6. DUTIES OF THE NAMED INSURED IN THE EVENT OF LOSS OR DAMAGE**
> You must see that the following are done in the event of loss or damage to covered property:[6]

Part of these duties are prompt notice to the insurance company. In response to this notice Rockhill Insurance Company establishes a claim and assigns representatives to investigate those damages giving rise to loss, evaluate whether those damages are covered under the policy and if covered determine the

---

[3] Deposition of Philip Ambrose, pg. 43 lines 20-22
[4] GlobalPro correspondence dated March 27, 2018
[5] Deposition of Philip Ambrose, pg. 96 lines 10-12
[6] Coverage Form CAT7011 (01/16)

extent of the policy's monetary response. If the investigation determined that no payment is warranted, or the payment falls below the deductible a corresponding position paper is issued citing the position and the basis upon which the position was determined.

1. Rockhill Insurance Company, in issuance of the policy and acceptance of First Notice of Loss created an expectation that they would adjust the reported loss. Rockhill Insurance Company has failed to adjust the loss despite being aware, as early as September 20, 2017 that the loss exceeded the deductible.[7]

> 11 **Q. Following your initial inspection, did you**
> 12 **make a determination whether or not the claim fell**
> 13 **above or below the deductible in this case?**
> 14 A. Yes.
> 15 **Q. Did you determine that the claim fell**
> 16 **above the deductible?**
> 17 **MS. LEVY:** That, you can answer.
> 18 A. Yes.
> 19 **Q. Okay. And you did that without writing an**
> 20 **estimate?**
> 21 A. Yes.

2. Rockhill Insurance Company mislead St. Louis Condominium Association, Inc. by creating an expectation of payment for that loss it (Pesak) had determined was in excess of the deductible and then not paying for that loss in accordance with the terms and conditions of the policy.

3. Insurance Adjusting is regulated by the Florida Department of Financial Services (DFS). As such the DFS issues guidelines for adjusters to follow in the performance of their job-related duties. These guidelines are found in the Florida Administrative Code (FAC) as cited in part:

> '**69B-220.201 Ethical Requirements for All Adjusters and Public Adjuster Apprentices.**
>
> (1) Definitions.
>
> > (a) "Adjuster," when used without further specification, includes all types and classes of insurance adjusters, (company employee, independent, and public), subject to chapter 626, F.S., regardless of whether permanent, temporary, apprentice, or emergency licensees.
> >
> > (b) "Department" means the Florida Department of Financial Services.
> >
> > (c) "Person" includes natural persons and legal entities.

---

[7] Deposition of Stephen Pesak, pg. 92 lines 11 - 21

(2) Violation.

    (a) Violation of any provision of this rule shall constitute grounds for administrative action against the licensee.

    (b) A breach of any provision of this rule constitutes an unfair claims settlement practice.

(3) Code of Ethics. The work of adjusting insurance claims engages the public trust. An adjuster shall put the duty for fair and honest treatment of the claimant above the adjuster's own interests in every instance. The following are standards of conduct that define ethical behavior, and shall constitute a code of ethics that shall be binding on all adjusters:

    (a) An adjuster shall not directly or indirectly refer or steer any claimant needing repairs or other services in connection with a loss to any person with whom the adjuster has an undisclosed financial interest, or who will or is reasonably anticipated to provide the adjuster any direct or indirect compensation for the referral or for any resulting business.

    (b) An adjuster shall treat all claimants equally.

        1. An adjuster shall not provide favored treatment to any claimant.

        2. An adjuster shall adjust all claims strictly in accordance with the insurance contract.

    (c) An adjuster shall not approach investigations, adjustments, and settlements in a manner prejudicial to the insured.

    (d) An adjuster shall make truthful and unbiased reports of the facts after making a complete investigation.

    (e) An adjuster shall handle every adjustment and settlement with honesty and integrity, and allow a fair adjustment or settlement to all parties without any compensation or remuneration to himself or herself except that to which he or she is legally entitled.

    (f) An adjuster, upon undertaking the handling of a claim, shall act with dispatch and due diligence in achieving a proper disposition of the claim.

    (g) An adjuster shall not negotiate or effect settlement directly or indirectly with any third-party claimant represented by an attorney, if the adjuster has knowledge of such representation, except with the consent of the attorney. For purposes of this subsection, the term "third-party claimant" does not include the insured or the insured's resident relatives.

    (h) An adjuster shall not advise a claimant to refrain from seeking legal advice, nor advise against the retention of counsel or the employment of a public adjuster to protect the claimant's interest.

(i) An adjuster shall not attempt to negotiate with or obtain any statement from a claimant or witness at a time that the claimant or witness is, or would reasonably be expected to be, in shock or serious mental or emotional distress as a result of physical, mental, or emotional trauma associated with a loss. The adjuster shall not conclude a settlement when the settlement would be disadvantageous to, or to the detriment of, a claimant who is in the traumatic or distressed state described above.

(j) An adjuster shall not knowingly fail to advise a claimant of the claimant's claim options in accordance with the terms and conditions of the insurance contract.

(k) An adjuster shall not undertake the adjustment of any claim concerning which the adjuster is not currently competent and knowledgeable as to the terms and conditions of the insurance coverage, or which otherwise exceeds the adjuster's current expertise.

(l) No person shall, as a company employee adjuster or independent adjuster, represent him- or herself or any insurer or independent adjusting firm against any person or entity that the adjuster previously represented as a public adjuster.

These administrative codes shall be referenced in the following conclusions (3 through 7):

3. (continued) Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have violated the public trust in their collective failure to properly investigate, evaluate and determine benefits due.[8]

4. Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due under the policy of insurance have not treated the assured equally in that Rockhill Insurance Company representatives have recognized the loss exceeds the deductible and have failed to make payment on the claim.[9]

5. Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have failed to adjust the claim. 1 year has passed and no payments have been issued despite the fact that Rockhill Insurance Company representatives have recognized the loss exceeds the deductible.[10]

---

[8] FAC paragraph 3
[9] FAC paragraph 3(b)
[10] FAC paragraph3(b) 2

6.  Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have approached the adjustment of the claim in a manner prejudicial to the insured, in that no adjustment or payments have been made.[11]

7.  Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have not adjusted the claim in a timely manner. Over 1 year has elapsed since the date of loss and no disposition has been attempted.[12]

8.  Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have failed to advise the insured of their claim options under the policy.[13]

9.  Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due routinely failed to acknowledge written communications despite statutory requirements to do so.[14]

10. By failing to pay monies due under the insurance contract, Rockhill Insurance Company has constructively denied the claim without conducting a reasonable investigation, despite statutory requirements that it do so.[15]

11. Rockhill Insurance Company has failed to advise the insured of additional information it requires in order to complete its investigation and the reasons for such information.[16]

12. Rockhill Insurance Company has failed to pay undisputed amounts of the loss despite statutory requirements that it do so.[17]

13. The adjustment of this loss does not meet industry standards for the adjustment of property losses.

Signed: _____
          William S Coffman, Jr.
          10/1/2018

---

[11] FAC paragraph 3(c)
[12] FAC paragraph 3(f)
[13] FAC paragraph 3(j)
[14] Florida Statutes 626.9541 (i) 3.c
[15] Florida Statutes 626.9541 (i) 3.d
[16] Florida Statutes 626.9541 (i) 3.g,h
[17] Florida Statutes 626.9541 (i) 4

<u>**Expert Report of William S. Coffman, Jr**</u>.


**ST. LOUIS CONDOMINIUM ASSOCIATION, INC., a Florida not-for profit Corporation**

**vs.**

**ROCKHILL INSURANCE COMPANY**

<u>**Qualifications and Experience**</u>

I have worked in the insurance industry for over 34 years as an adjuster and loss consultant. Throughout this period, I have held key positions with Hartford Insurance and am currently an independent adjuster providing claims services to the insurance industry.  I have broad experience in claim handling and claim management and hold special expertise in the adjustment of large property claims.  Based on my experience of adjusting and advising on claims throughout the United States, I have specialized knowledge regarding the industry standards applicable to insurers and insurance adjusters.


<u>**Background**</u>

The St. Louis Condominium Association consists of a thirty-one (31) story building containing 134 units, flat roof systems, multi-story parking garage/parking deck, and an in-ground pool and pool deck that was constructed in 1995.[1] The condominium sustained damage from Hurricane Irma, which made landfall in the Florida Keys as a Category 4 storm on September 10, 2017. The eye of the storm tracked along the west coast of Florida reaching Naples as a category 2 storm. Winds from Hurricane Irma affected the east coast as well with a wind gust of 109 mph being recorded in Pembroake Pines, FL.[2]

St. Louis Condominium Association, Inc. retained the services of Globalpro Recovery, Inc. to advise and assist with the presentation of their loss. Globalpro Recovery, Inc. reported the loss to Rockhill Insurance Company on or about September 13, 2018.  Rockhill Insurance Company set up a claim and assigned Engle Martin Associates to investigate. Engle Martin Associates assigned the claim to Stephen Pesak, Executive General Adjuster.  An initial inspection by Mr. Pesak was conducted on or about September 20, 2017

From September 20, 2017 until January 16, 2018 neither Rockhill Insurance Company nor agents acting on its behalf made any requests for information or inspections.

Rockhill Insurance Company engaged the services of an engineer, Mr. Bert Davis and a building consultant, Mr. Paul Millard. An inspection (which was the second one performed on behalf of Rockhill

---

[1]   Post Hurricane Irma Engineering Evaluation of the St. Louis Condominium Association, Miami Florida, prepared by: The Falcon Group Engineering, Architecture & Energy Consultants 7430 SW 48th Street Miami, FL 33155
[2] ibid

Insurance Company) by Mr. Davis and Mr. Millard took place on or about January 31, 2018. At this this inspection no adjuster from the insurance company attended despite requesting this reinspection. A third inspection occurred on February 28, 2018 and a fourth inspection occurred on March 1, 2018. These last two inspections were performed by Mr. Davis and Mr. Millard. Also present during these inspections was Mr. Ambrose and the insurer's attorney Ms. Levy. [3]

At some point prior to the January 31, 2018 inspection Engle Martin reassigned the investigation of the claim to Philip Ambrose, Sr. Executive General Adjuster.

A Sworn Statement in Proof of Loss was submitted to Rockhill Insurance Company via letter dated February 13, 2018, in the amount of $16,113,648.88.

Suit was filed on or about March 5, 2018.

As of this report no denial letters have been issued, no loss less than the deductible letters have been issued and no payments (partial or full) have been made.

As of September 12, 2018, no estimates have been prepared by or on behalf of Rockhill Insurance Company. [4]


## Opinions and Conclusions

The conclusions enumerated below are general in nature and I intend to expound upon these upon questioning at my deposition. I also reserve the right to add to these opinions and form new opinions with additional or new information, such as transcripts of completed depositions of Rockhill Insurance Company's adjuster, corporate representative, underwriting representative, plaintiffs Public Adjuster and Rockhill Insurance Company's "expert" who inspected the property.

Nowhere in the insurance policy issued by Rockhill Insurance Company does it instruct the assured on how to make an insurance claim. Rather they are instructed only on what they must do in the event of loss or damage:

> **6. DUTIES OF THE NAMED INSURED IN THE EVENT OF LOSS OR DAMAGE**
> You must see that the following are done in the event of loss or damage to covered property: [5]

Part of these duties are prompt notice to the insurance company. In response to this notice Rockhill Insurance Company establishes a claim and assigns representatives to investigate those damages giving rise to loss, evaluate whether those damages are covered under the policy and if covered determine the extent of the policy's monetary response. If the investigation determined that no payment is warranted

---

[3] Globalpro correspondence dated March 27, 2018
[4] Deposition of Philip Ambrose, pg. 96 line s 10-12
[5] Coverage Form CAT7011 (01/16)

or the payment falls below the deductible a corresponding position paper is issued citing the position and the basis upon which the position was determined.

1.  Rockhill Insurance Company, in issuance of the policy and acceptance of First Notice of Loss created an expectation that they would adjust the reported loss. Rockhill Insurance Company has failed to adjust the loss despite being aware, as early as September 20, 2018 that the loss exceeded the deductible.[6]

> 11 **Q. Following your initial inspection, did you**
> 12 **make a determination whether or not the claim fell**
> 13 **above or below the deductible in this case?**
> 14 A. Yes.
> 15 **Q. Did you determine that the claim fell**
> 16 **above the deductible?**
> 17 **MS. LEVY:** That, you can answer.
> 18 A. Yes.
> 19 **Q. Okay. And you did that without writing an**
> 20 **estimate?**
> 21 A. Yes.

2.  Rockhill Insurance Company mislead St. Louis Condominium Association, Inc. by creating an expectation of payment for that loss it (Pesak) had determined was in excess of the deductible and then not paying for that loss in accordance with the terms and conditions of the policy.

3.  Insurance Adjusting is regulated by the Florida Department of Financial Services (DFS). As such the DFS issues guidelines for adjusters to follow in the performance of their job-related duties. These guidelines are found in the Florida Administrative Code (FAC) as cited in part:

> '**69B-220.201 Ethical Requirements for All Adjusters and Public Adjuster Apprentices.**
>
> (1) Definitions.
>
> > (a) "Adjuster," when used without further specification, includes all types and classes of insurance adjusters, (company employee, independent, and public), subject to chapter 626, F.S., regardless of whether permanent, temporary, apprentice, or emergency licensees.
> >
> > (b) "Department" means the Florida Department of Financial Services.
> >
> > (c) "Person" includes natural persons and legal entities.
>
> (2) Violation.

---

[6] Deposition of Stephen Pesak, pg. 92 lines 11 - 21

(a) Violation of any provision of this rule shall constitute grounds for administrative action against the licensee.

(b) A breach of any provision of this rule constitutes an unfair claims settlement practice.

(3) Code of Ethics. The work of adjusting insurance claims engages the public trust. An adjuster shall put the duty for fair and honest treatment of the claimant above the adjuster's own interests in every instance. The following are standards of conduct that define ethical behavior, and shall constitute a code of ethics that shall be binding on all adjusters:

(a) An adjuster shall not directly or indirectly refer or steer any claimant needing repairs or other services in connection with a loss to any person with whom the adjuster has an undisclosed financial interest, or who will or is reasonably anticipated to provide the adjuster any direct or indirect compensation for the referral or for any resulting business.

(b) An adjuster shall treat all claimants equally.

1. An adjuster shall not provide favored treatment to any claimant.

2. An adjuster shall adjust all claims strictly in accordance with the insurance contract.

(c) An adjuster shall not approach investigations, adjustments, and settlements in a manner prejudicial to the insured.

(d) An adjuster shall make truthful and unbiased reports of the facts after making a complete investigation.

(e) An adjuster shall handle every adjustment and settlement with honesty and integrity, and allow a fair adjustment or settlement to all parties without any compensation or remuneration to himself or herself except that to which he or she is legally entitled.

(f) An adjuster, upon undertaking the handling of a claim, shall act with dispatch and due diligence in achieving a proper disposition of the claim.

(g) An adjuster shall not negotiate or effect settlement directly or indirectly with any third-party claimant represented by an attorney, if the adjuster has knowledge of such representation, except with the consent of the attorney. For purposes of this subsection, the term "third-party claimant" does not include the insured or the insured's resident relatives.

(h) An adjuster shall not advise a claimant to refrain from seeking legal advice, nor advise against the retention of counsel or the employment of a public adjuster to protect the claimant's interest.

(i) An adjuster shall not attempt to negotiate with or obtain any statement

from a claimant or witness at a time that the claimant or witness is, or would reasonably be expected to be, in shock or serious mental or emotional distress as a result of physical, mental, or emotional trauma associated with a loss. The adjuster shall not conclude a settlement when the settlement would be disadvantageous to, or to the detriment of, a claimant who is in the traumatic or distressed state described above.

(j) An adjuster shall not knowingly fail to advise a claimant of the claimant's claim options in accordance with the terms and conditions of the insurance contract.

(k) An adjuster shall not undertake the adjustment of any claim concerning which the adjuster is not currently competent and knowledgeable as to the terms and conditions of the insurance coverage, or which otherwise exceeds the adjuster's current expertise.

(l) No person shall, as a company employee adjuster or independent adjuster, represent him- or herself or any insurer or independent adjusting firm against any person or entity that the adjuster previously represented as a public adjuster.

These administrative codes shall be referenced in the following conclusions (2 through 7):

2.  (continued) Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have violated the public trust in their collective failure to properly investigate, evaluate and determine benefits due.[7]

3.  Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due under the policy of insurance have not treated the assured equally in that Rockhill Insurance Company representatives have recognized the loss exceeds the deductible and have failed to make payment on the claim.[8]

4.  Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have failed to adjust the claim. 1 year has passed and no payments have been issued despite the fact that Rockhill Insurance Company representatives have recognized the loss exceeds the deductible.[9]

5.  Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have approached the adjustment of the claim in a manner prejudicial to the insured, in that no adjustment or payments have been made.[10]

---

[7] FAC paragraph 3
[8] FAC paragraph 3(b)
[9] FAC paragraph3(b) 2
[10] FAC paragraph 3(c)

6. Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have not adjusted the claim in a timely manner. Over 1 year has elapsed since the date of loss and no disposition has been attempted.[11]

7. Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have failed to advise the insured of their claim options under the policy.[12]

8. Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due routinely failed to acknowledge written communications despite statutory requirements to do so.[13]

9. By failing to pay monies due under the insurance contract, Rockhill Insurance Company has constructively denied the claim without conducting a reasonable investigation, despite statutory requirements that it do so.[14]

10. Rockhill Insurance Company has failed to advise the insured of additional information it requires in order to complete its investigation and the reasons for such information.[15]

11. Rockhill Insurance Company has failed to pay undisputed amounts of the loss despite statutory requirements that it do so.[16]

12. The adjustment of this loss does not meet industry standards for the adjustment of property losses.

Signed: _____

William S Coffman, Jr.

10/1/2018

---

[11] FAC paragraph 3(f)

[12] FAC paragraph 3(j)

[13] Florida Statutes 626.9541 (i) 3.c

[14] Florida Statutes 626.9541 (i) 3.d

[15] Florida Statutes 626.9541 (i) 3.g,h

[16] Florida Statutes 626.9541 (i) 4

Invoice

William S Coffman, Jr.

1025 94th Street

Apt 2

Bay Harbor Islands, FL 33154

252-320-2164

St Louis Condominium Association, Inc  vs  Rockhill Insurance Company

| Retainer | | | | Retainer Amount | |
|---|---|---|---|---|---|
| | Initial Retainer | | | | |
| | Additional Retainer | | | | |
| | Total Retainer Received | | | $0.00 | |

| Hourly Charge | Non-Trial | | | $175.00 | |
|---|---|---|---|---|---|
| | Trial and Trial Prep | | | $250.00 | |

| Date | Description of Work | Time | Charges | | Balance Against Retainer |
|---|---|---|---|---|---|
| 9/29/2018 | Review emails and depositic | 3 | $525.00 | | -$525.00 |
| 9/30/2018 | Review emails and depositic | 4 | $700.00 | | -$1,225.00 |
| 10/1/2018 | Prepare Report | 2 | $350.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | | | $0.00 | | -$1,575.00 |
| | Retainer Balance | | | | -$1,575.00 |
| | Retainer Balance Check | 9 | $1,575.00 | | -$1,575.00 |

**Amount Due**          **$1,575.00**

*William S. Coffman: Claims Appraised*

| Year | Title | Acted In Capacity | Status |
|------|-------|-------------------|--------|
| 2003 | Shulman v Liberty Mutual | Insured Appraiser | Went To Umpire |
| 2003 | Shulman v Liberty Mutual | Insured Appraiser | Went To Umpire |
| 2005 | Cid v American Summit | Insured Appraiser | Went To Umpire |
| 2005 | Johnson v Liberty American | Insured Appraiser | Settled With Appraiser |
| 2006 | Langly v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Bulbin v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Kupfer v Sentry | Insured Appraiser | Settled With Appraiser |
| 2007 | Montgomery v Balboa | Umpire | Went To Umpire |
| 2007 | Shulman V Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Snug Harbor Condo v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Spitzer v Safeco Insurance | Insured Appraiser | Went To Umpire |
| 2007 | Tavares v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Tavares v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | New Paseos Condo v State Farm | Insured Appraiser | Settled With Appraiser |
| 2008 | Levine v Citizens | Insured Appraiser | Went To Umpire |
| 2008 | Carmelo v Citizens | Umpire | Settled With Appraiser |
| 2008 | Gray v Citizens | Umpire | Settled With Appraiser |
| 2008 | Milby v Citizens | Umpire | Went To Umpire |
| 2008 | Poli v FIGA | Insured Appraiser | Settled With Appraiser |
| 2008 | Valle v Pacific Insurance | Insured Appraiser | Went To Umpire |
| 2009 | Kramer v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Lind v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Castillo v Citizens | Insured Appraiser | Umpire Award |
| 2009 | Palmetto Center v C.N.A. | Insured Appraiser | Litigation |
| 2009 | Brown v Citizens | Insured Appraiser | Litigation |
| 2009 | Axe v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Gelper v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Greenwald v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Itzkowitz v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Logvin v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Messinger v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Michon v Hartford | Insured Appraiser | Umpire Award |
| 2009 | C. Rubin v Hartford | Insured Appraiser | Umpire Award |
| 2009 | M. Rubin v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Rothstein v State Farm | Insured Appraiser | Umpire Award |
| 2009 | Salzberg v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Schenker v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Sulzer v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Weinrich v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Weiss v Hartford | Insured Appraiser | Settled With Appraiser |
| 2009 | Vila v Tower Hill | Insured Appraiser | Went To Umpire |
| 2009 | Ready v Tower Hill | Insured Appraiser | In Process |
| 2009 | Crystal Greens Condo v Travelers | Company Appraiser | Went To Umpire |
| 2009 | Holy Theotokos Monestary v Church Mutual | Company Appraiser | Went To Umpire |
| 2009 | Bether AME Church - Deerfield Beach v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 | Betherl AME Church - Indian River v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 | Chomat v Liberty Mutual | Insured Appraiser | Settled With Appraiser |
| 2009 | Goihman v FIGA | Insured Appraiser | Litigation |
| 2009 | House of God v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 | House of God - Miami v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 | Mt Sinai Baptist Church v Church Mutual | Company Appraiser | Settled With Appraiser |

## *William S. Coffman: Claims Appraised*

| | | |
|---|---|---|
| 2009 Miracle By Faith v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 Mount Zion Arcadia v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2010 St. Nicholas Monestary v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2010 St Paul AME v Church Mutual | Company Appraiser | Settled With Appraiser |

*William S. Coffman: Claims Appraised*

**Award Amount**

$168,000.00
$200,000.00
$72,125.00
$291,889.10
$50,836.84
$33,470.66
$76,640.70
$27,000.00
$65,000.00
$839,424.70
$94,466.81
$61,527.79
$26,326.00
$1,279,000.00
$63,000.00


$37,500.00
$438,482.18
$46,233.11
$35,264.63
$63,286.94

$402,835.81
$38,160.36
$29,687.93
$28,884.92
$36,332.00
$26,685.77
$20,189.95
$30,653.23
$16,689.16
$14,927.00
$40,450.00
$49,854.20
$32,012.04
$33,546.88
$30,202.44
$48,752.29
$5,683.25
$233,240.66
$198,811.00
$246,573.00


$79,959.39

$96,707.51

*William S. Coffman: Claims Appraised*

$43,000.00
$84,163.91

| Year | Title | Approximate Value |
|------|-------|-------------------|
| 1996 | Cardinal Realty | $8,000,000 |
| 1996 | St. Regis | $7,900,000 |
| 1996 | Wrightsville Dunes COA | $1,900,000 |
| 1996 | Shell Island | $1,500,000 |
| 1996 | Ocean Dunes | $2,450,000 |
| 2001 | Prime Real Estate | $275,000 |
| 2001 | Ms. Hannah S | $254,000 |
| 2003 | Ms. Gilliam D | $275,000 |
| 2003 | Atrium COA | $318,000 |
| 2004 | Meridian COA | $845,000 |
| 2005 | Johnson v Liberty American | $291,889.10 |
| 2005 | 3360 Condominium | $3,500,000 |
| 2007 | New Paseos Condo v State Farm | $1,279,000.00 |
| 2007 | Snug Harbor Condo v Citizens | $839,424.70 |
| 2008 | Valle v Pacific Insurance | $438,482.18 |
| 2009 | Brown v Citizens | $402,835.81 |
| 2009 | Ready v Tower Hill | $233,240.66 |
| 2009 | Crystal Greens Condo v Travelers | $198,811.00 |
| 2009 | Holy Theotokos Monestary v Church | $246,573.00 |

*Expert Work*

| Year | Attorney | Case | Capacity Depo/Trial | Notes |
|---|---|---|---|---|
| 2009 | Arrian Niemen-Arkin, Mintz Truppman       Miami FL | Brown v Citizens Property Insurance Company | Deposition | Called in capacity as appraiser for Brown. Testified as to damages and how they were determined |
| 2011 | Kenneth Duboff,          Law Offices of Kenneth Duboff Miami, FL | Salzman v Sunshine State Insurance Company | Deposition | Performed IR inspection for Salzman in 2008. Called to provide testimony regarding IR findings |
| 2012 | Matthew Sekits, esq Bullivant Houser Bailey Seattle, Wa | REM Market v Argonaut Great Central | Deposition | Testified in capacity of claims expert on claims handling and industry standards |
| 2012 | Mark Mintz,            Mintz Truppman       Miami FL | *Atlantic Hospitality of Florida, LLC v General Starr Insurance Company* | Deposition | Reviewed files, provided verbal opinion. Deposed |
| 2012 | Leo Manzanilla, Manzanilla Schwartz Miami FL | American Verterinary  v American Casualty Company Of Reading, PA | Claims Expert | Provided policy analysis and damage analysis. |
| 2012 | Matthew Sekits, esq Bullivant Houser Bailey Seattle, Wa | Occupational Medical Clainic of Tacoma v Hartford Insurance Group | Claims Expert | Reviewed files, provided verbal opinion. Resolved |
| 2013 | Mark Mintz,            Mintz Truppman       Miami FL | Jarrette Bay Investments Corp. v Citizens Property Insurance Corporation | Deposition | Reviewed files, provided verbal opinion. Deposed. Resolved |
| 2014 | Mark Mintz,            Mintz Truppman       Miami FL | Palmetto Bay Investments v.  Citizens Property Insurance Corporation | Deposition | Reviewed files. Deposed. Resolved |
| 2014 | Mark Mintz,            Mintz Truppman       Miami FL | Antares v Lloyds | Deposition | Reviewed files. Deposed. Resolved |
| 2014 | Germain Law Group | Bay Towers Condominium Association | Claims Expert | Inspected Loss |
| 2015 | Adrian Nieman-Arkin Mintz Truppman | Sosa Saurez v. Liberty Mutual Insurance Company | Claims Expert | Reviewed Files. Provided written report. |
| 2018 | Mark Mintz,            Mintz Truppman       Miami FL | Brickellhouse Condominium Association v Hartford Steam Boiler | Deposition | Reviewed Files. Provided written report. Deposition |
| 2018 | Mark Mintz,            Mintz Truppman       Miami FL | Washington v. Florida Peninsula Insurance | Claims Expert | Reviewed files. |

**Lourdes Artigas**

| | |
|---|---|
| **From:** | Dania Brady |
| **Sent:** | Tuesday, October 02, 2018 5:00 PM |
| **To:** | 'Jocelyn Engracio' |
| **Cc:** | 'Lauren Levy'; 'Lourdes Artigas'; 'Michael Metta'; Susan Catania Odess; Engie Tapia; Docketing Clerk |
| **Subject:** | SERVICE OF COURT DOCUMENTS - St. Louis Condominium Association, Inc. v Rockhill Insurance Company - Case No. 18-cv-21365-CIV-WILLIAMS/TORRES |
| **Attachments:** | 2180128. Plaintiff's Supplemental Expert Witness Disclosures.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Good afternoon,

Below is a link with the supplemental exhibits mentioned in our Supplemental Expert Witness Disclosures.
Thank you.

https://srhl-law.sharefile.com/d-s8d21c3173604f458

| | |
|---|---|
| **Court in which proceeding is pending:** | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA- MIAMI DIVISION |
| **Case Number:** | 1:18-cv-21365-KMW |
| **Name of initial party on each side:** | ST. LOUIS CONDOMINIUM ASSOCIATON, INC. V. ROCKHILL INSURANCE COMPANY |
| **Document served:** | • Plaintiff's Supplemental Expert Witness Disclosures |
| **Sender's Name & Telephone Number:** | Susan C. Odess, Esq. 305-442-3334 |

**Dania Brady**
Legal Assistant to:
Susan C. Odess and Daniel Jovanov
Siegfried, Rivera, Hyman, Lerner,
De La Torre, Mars & Sobel, P.A.
201 Alhambra Circle, Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-3334 Ext 385 ● Fax: 305-446-8727
www.srhl-law.com ● dbrady@srhl-law.com

Follow us on: Facebook ● Twitter ● LinkedIn ● Youtube

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby

notified that any dissemination, distribution or copying of this e-mail and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently deleting the original and any copy of this e-mail and any printout thereof.

## <u>EXPERT REPORT OF MARK J. MINTZ, ESQ</u>.

The undersigned, Mark J. Mintz, Esq., is an attorney who has practiced for approximately 38 years in varied areas of Florida's civil law, specializing in first-party property insurance claims and litigation.  I have been retained by the Plaintiff, St. Louis Condominium Association, Inc. ("St. Louis"), to render an opinion on various insurance industry standards issues related to the insurance claim pre-suit activities and litigation between Plaintiff and Rockhill Insurance Company ("Rockhill").  My current hourly rate and rate in this matter is $750, plus costs.  My CV is available on my page at Mintztruppman.com, as is other information about me and my law firm.

The field of insurance, particularly first-party property insurance (non-auto), while not scientific, is a specialized area, with its own technical terms and standards, which are not within the common knowledge of the general public.  This is particularly true as it relates to condominium, commercial and commercial residential property insurance.  My opinions, herein, based upon my education, training and experience, are *directly relevant to assist the jury in determining whether Rockhill properly performed its obligations under the insurance contract at issue in accordance with generally accepted insurance industry standards, or whether it did not (in breach of the policy)*, as well as whether St. Louis did or did not do so as alleged in Rockhill's defenses and counterclaim.  This will necessarily require the jury to have certain insurance industry specific policy terms, standards and practices explained.  A determination of policy compliance or breach by either party necessarily requires an understanding of insurance industry specifics.

Qualifications

The undersigned has extensive litigation experience in various areas of Florida civil litigation, having been admitted to practice law in Florida in 1980.  I am the senior and managing partner of Mintz Truppman, P.A., one of the oldest continuing first-party property insurance litigation firms in South Florida.  For a significant portion of my career, I worked as insurance defense counsel specializing in first-party property insurance claims, and have acted as an insurance Appraiser.  Simultaneously, I also specialized in first-party insurance claims representing insureds in such cases.  Since 2006 I have only represented insureds, not insurers.  I have lectured at FAPIA conferences, and ABA events, and other venues.  I regularly consult with many of the most active and successful first-party property insurance lawyers and adjusters in South Florida.  The undersigned and my law firm, under my guidance, have many of the leading insurance appellate cases in Florida and my case of *Club West v. Tropigas* is still taught at voir dire seminars.

I am frequently consulted or hired as an insurance litigation consultant or expert witness in complex insurance claims or as an attorney's fee expert.  However, I only recall giving testimony in one case within the last four years as an expert, which is *Sans Souci v. Citizens*, Miami Dade Circuit Court Case No. 10-54803 CA 13.

Summary of Opinions

Rockhill engaged in conduct designed to delay and deny the insured's claim in this case to avoid paying what was and is due.  This includes Rockhill's multiple breaches of the policy and its obligations under Florida law (enforced by the Federal Court in this case), violating industry standards in investigating the claim, hiring a lawyer to serve as a conduit/adjuster for the insurance company during the adjustment of the claim, failing to pay, and taking unsupported

2

defense and litigation positions when its insured was required to file suit.

My testimony will explain the Insurance Company's violation of insurance industry standards including Rockhill's failure to properly investigate and adjust St. Louis' insurance claim, violating its obligations under the insurance contract and insurance industry standards, as well as St. Louis' alleged failure to meet its own duties under the policy.  This information is clearly not within the basic knowledge or understanding of the average lay juror. My opinions will advise of the application of the policy exclusions and duties raised by Rockhill in its defenses and counterclaim in this case, and explain how they work in real life, so a lay juror can understand.

The expected opinions based on first-party property insurance industry standards and my experience in the industry are detailed below.

Materials Reviewed

The undersigned has for review, relevant portions of the litigation file in this case, including pleadings, discovery, and the insurance policy at issue.  In addition, I have been provided pre-suit communications (letters and emails) on policy compliance issues; document production by both Rockhill (relatively nonexistent) and St. Louis; and I have discussed and reviewed various facts of this claim and case with Plaintiff's counsel because the important depositions of Rockhill's (b)(6) corporate representative and Rockhill's underwriting representative have not yet taken place.  Additionally, I have Mr. Bert Davis' deposition, which has not been concluded, and the depositions of Stephen Pesak and Philip Ambrose.  This information has been reviewed in formulating my opinions, as relevant, and additional information is expected.

<u>Detail of Opinions</u>

Based on my review of the materials identified above, and discussions with Plaintiff's counsel, I am of the opinion that:

- Rockhill insured the window and door systems at the Property as part of the insured building.

- Rockhill insured the building envelope at the Property as part of the insured building.

- The issuance of the policy of insurance, with no exclusion or other indication (endorsements) that the windows and door systems and building envelope would not be covered, prevents Rockhill from denying or raising coverage defenses, including as it relates to pre-existing conditions for those items. The insurance company accepted the property in its condition as and when insured, after either inspecting or choosing not to inspect. Failure to provide such coverage would further be fraud in the inducement and is prohibited by industry standards.

- It appears that the Insurance Company collected premiums without ever intending to provide coverage as shown by 1) Rockhill's adjuster representing that the claim exceeded the Policy's deductible in September of 2017, yet Rockhill failed to 2) write an estimate; 3) send an advance or pay for the admittedly covered damage; 4) send payment for the claim; or 5) send payment for the amount that was agreed to be above the deductible.

- St. Louis complied with all conditions precedent before filing the lawsuit or Rockhill waived any such policy compliance and St. Louis' lawsuit was not filed prematurely. The Insurance Company delayed any evaluation and then, on prompting by the insured, had multiple inspections where it could have (and did to some degree) evaluated the claim fully.

- St. Louis allowed four inspections of its Property by Rockhill's adjusters (although they apparently didn't always show up) and retained experts, which fulfilled St. Louis' duty

St. Louis - Plaintiff's Expert - Mark Mintz, Esq.'s File - 000004

and obligation under the Policy to make the property available for inspection.  If Rockhill chose not to complete its inspection, it did so at its peril and violated industry standards.

- The four inspections that were conducted by Rockhill and Rockhill's experts allowed Rockhill to complete its investigation of the Property and the damage, within industry standards, and apparently it did so, but surely should have done so.  The request for an additional inspection is either a fabricated "need" intentionally creating delay, or based on an admission of Rockhill's prior breach in not concluding its investigation on the first four inspections.

- Rockhill's attorney served as a conduit/adjuster for the Insurance Company by participating in the adjustment process, not as an attorney.  Rockhill's lawyer is not entitled to claim attorney-client privilege, or waived attorney-client privilege at the point it engaged in the adjustment of the claim's process. Rockhill's attorney advised St. Louis' public adjuster to direct all correspondence to her office during the adjustment of the claim.

- Rockhill's counterclaim is without merit.  There is no concealment or fraud by St. Louis and such would only be a defense, not a counterclaim.  The same applies to the alleged lack of policy compliance and the counterclaim as a whole.  St. Louis chose not to ask for information and delayed its investigation unnecessarily and then is attempting to blame the insured for the Insurance Company's lack of action.  This is below industry standards. A good faith dispute in value is never fraud.  Nothing was concealed.  Rockhill simply did not make requests for information, and then complained instead of gladly accepting and evaluating the insured's documentation, since the insured did the work that the Insurance Company should have done.

- Rockhill's failure to pay for St. Louis' loss was clearly intentional and calculated to serve Rockhill's own interests at the expense of its insured. This is evidenced by the

5

factual circumstances and chain of events set forth above, including its invalid and improper interpretation of the policy, if claimed to support its actions/inactions. It also includes Rockhill's delay conduct towards its insured, as described above, including providing what amounted to "quasi" illusory coverage to its insured, if Rockhill didn't pay its evaluation above the deductible or refused to prepare an estimate to that end. Some facts from the Insurance Company's own witnesses, which it ignored, include:

- Cracks looked recent (Pesak deposition, pp. 80-81).
- Claim above deductible (Pesak deposition, pp. 92-93).
- Litigation not anticipated as of February 27, 2018 (Pesak deposition, p. 120).
- Damage didn't pre-date Hurricane Irma (Ambrose deposition, pp. 81 and 101).
- No estimate done yet (Ambrose September 2018 deposition, p. 57).

• Rockhill's investigation fell below the industry standard of what is required when performing inspections of insurance claims in various respects as set forth herein. There was no due regard for the insured's Hurricane Irma damages or need for repairs.

• Rockhill and its adjusters had a duty and obligation to continuously and timely communicate with St. Louis and it failed to do so and that is below insurance industry standards.

• Rockhill had an independent obligation to determine the value of damaged property and to determine the value of its repair and/or replacement. Rockhill was obligated to give notice of its intentions within thirty days of its receipt of the Sworn Proof of Loss. Failure to do so is below insurance industry standards.

• Rockhill didn't pay on the Proof of Loss or properly reject it, therefore, it accepted it. There is no such thing as an unsolicited Proof of Loss, if that's meant to mean something done wrong by insured.

• Failure to pay or deny is breach of policy and industry standards, especially not doing so within 90 days and/or 30 days after Proof of Loss, and that was the Insurance Company's

delay tactic in this matter.

- The applicable deductible is 3% of the amount of loss, subject to the $25,000 minimum per the policy, not 3% of policy limits.

- Per Mr. Ambrose, Rockhill's adjusting stopped when suit was filed.  That is below insurance industry standards as the Insurance Company should have done its estimate (none done yet per deposition, dated September 12, 2018, p. 57) and made payments due regardless of suit.

- Page 17, paragraphs 9 and 10 of Rockhill's Answer and Affirmative Defenses to the Complaint and Incorporated Counterclaim for Declaratory Judgment, documents and admits the Insurance Company's delay of months which was below industry standards.

- Paragraph 12 of the Counterclaim appears nonsensical in discussing a "flood claim" when the damages to the windows and the like and related water damage would clearly be above any flood level.

- A defense of "no prompt notice," based upon the date of submission of the dollar amount of the insured's estimate (not actual late notice of the loss) is contrary to insurance industry standards.

- The defense/counterclaim for failing to permit an inspection is nonsensical given that there were four inspections, as is the failure to cooperate argument.  The re-re-re-re-inspection claim is inappropriate.

- The issues addressed above are further supplemented by the Insurance Company's complete stonewalling of written discovery and deposition discovery.

- Insurance industry standards were violated when the Insurance Company sat around and didn't evaluate the claim, instead stating it relied only on its experts, when it was required to adjust the claim and cannot relegate that to experts.

The foregoing opinions will be confirmed, supplemented and potentially modified

after conclusion and transcription of all Rockhill witnesses' depositions and other witnesses referenced above, and receipt of documents from the claim file withheld by the Insurance Company.

Dated:  October 2, 2018

By: _____
        Mark J. Mintz, Esquire
        Mintz Truppman, P.A.
        1700 Sans Souci Boulevard
        North Miami, FL  33181
        Telephone:  305-893-5506
        mintz@mintztruppman.com

8

<u>**Expert Report of William S. Coffman, Jr**</u>.


**ST. LOUIS CONDOMINIUM ASSOCIATION, INC., a Florida not-for profit Corporation**

**vs.**

**ROCKHILL INSURANCE COMPANY**

<u>**Qualifications and Experience**</u>

I have worked in the insurance industry for over 34 years as an adjuster and loss consultant. Throughout this period, I have held key positions with Hartford Insurance and am currently an independent adjuster providing claims services to the insurance industry.  I have broad experience in claim handling and claim management and hold special expertise in the adjustment of large property claims.  Based on my experience of adjusting and advising on claims throughout the United States, I have specialized knowledge regarding the industry standards applicable to insurers and insurance adjusters.


<u>**Background**</u>

The St. Louis Condominium Association, Inc. consists of a thirty-one (31) story building containing 134 units, flat roof systems, multi-story parking garage/parking deck, and an in-ground pool and pool deck that was constructed in 1995.[1] The condominium sustained damage from Hurricane Irma, which made landfall in the Florida Keys as a Category 4 storm on September 10, 2017. The eye of the storm tracked along the west coast of Florida reaching Naples as a category 2 storm. Winds from Hurricane Irma affected the east coast as well with a wind gust of 109 mph being recorded in Pembroke Pines, FL.[2]

St. Louis Condominium Association, Inc. retained the services of GlobalPro Recovery, Inc. to advise and assist with the presentation of their loss. GlobalPro Recovery, Inc. reported the loss to Rockhill Insurance Company on or about September 13, 2017.  Rockhill Insurance Company set up a claim and assigned Engle Martin Associates to investigate. Engle Martin Associates assigned the claim to Stephen Pesak, Executive General Adjuster.  An initial inspection by Mr. Pesak was conducted on or about September 20, 2017

From September 20, 2017 until January 16, 2018 neither Rockhill Insurance Company nor agents acting on its behalf made any requests for information or inspections.

Rockhill Insurance Company engaged the services of an engineer, Mr. Bert Davis and a building consultant, Mr. Paul Millard. An inspection (which was the second one performed on behalf of Rockhill

---

[1]  Post Hurricane Irma Engineering Evaluation of the St. Louis Condominium Association, Miami Florida, prepared by: The Falcon Group Engineering, Architecture & Energy Consultants 7430 SW 48th Street Miami, FL 33355
[2] ibid

## Expert Report of William S. Coffman, Jr.

### ST. LOUIS CONDOMINIUM ASSOCIATION, INC., a Florida not-for profit Corporation

### vs.

### ROCKHILL INSURANCE COMPANY

## Qualifications and Experience

I have worked in the insurance industry for over 34 years as an adjuster and loss consultant. Throughout this period, I have held key positions with Hartford Insurance and am currently an independent adjuster providing claims services to the insurance industry.  I have broad experience in claim handling and claim management and hold special expertise in the adjustment of large property claims.  Based on my experience of adjusting and advising on claims throughout the United States, I have specialized knowledge regarding the industry standards applicable to insurers and insurance adjusters.

## Background

The St. Louis Condominium Association, Inc. consists of a thirty-one (31) story building containing 134 units, flat roof systems, multi-story parking garage/parking deck, and an in-ground pool and pool deck that was constructed in 1995.[1] The condominium sustained damage from Hurricane Irma, which made landfall in the Florida Keys as a Category 4 storm on September 10, 2017. The eye of the storm tracked along the west coast of Florida reaching Naples as a category 2 storm. Winds from Hurricane Irma affected the east coast as well with a wind gust of 109 mph being recorded in Pembroke Pines, FL.[2]

St. Louis Condominium Association, Inc. retained the services of GlobalPro Recovery, Inc. to advise and assist with the presentation of their loss. GlobalPro Recovery, Inc. reported the loss to Rockhill Insurance Company on or about September 13, 2017.  Rockhill Insurance Company set up a claim and assigned Engle Martin Associates to investigate. Engle Martin Associates assigned the claim to Stephen Pesak, Executive General Adjuster.  An initial inspection by Mr. Pesak was conducted on or about September 20, 2017

From September 20, 2017 until January 16, 2018 neither Rockhill Insurance Company nor agents acting on its behalf made any requests for information or inspections.

Rockhill Insurance Company engaged the services of an engineer, Mr. Bert Davis and a building consultant, Mr. Paul Millard. An inspection (which was the second one performed on behalf of Rockhill

---

[1] Post Hurricane Irma Engineering Evaluation of the St. Louis Condominium Association, Miami Florida, prepared by: The Falcon Group Engineering, Architecture & Energy Consultants 7430 SW 48th Street Miami, FL 33155

[2] ibid

Insurance Company) by Mr. Davis and Mr. Millard took place on or about January 31, 2018. At this inspection no adjuster from the insurance company attended despite requesting this reinspection. A third inspection occurred on February 28, 2018 and a fourth inspection occurred on March 1, 2018. These last two inspections were performed by Mr. Davis and Mr. Millard. Present during the February 28, 2018 inspection was Mr. Ambrose.[3] Also present during these inspections was the insurer's attorney Ms. Levy. [4]

At some point prior to the January 31, 2018 inspection Engle Martin reassigned the investigation of the claim to Philip Ambrose, Sr. Executive General Adjuster.

A Sworn Statement in Proof of Loss was submitted to Rockhill Insurance Company via letter dated February 13, 2018, in the amount of $16,113,648.88.

Suit was filed on or about March 5, 2018.

As of this report no denial letters have been issued, no loss less than the deductible letters have been issued and no payments (partial or full) have been made.

As of September 12, 2018, no estimates have been prepared by or on behalf of Rockhill Insurance Company.[5]


## Opinions and Conclusions

The conclusions enumerated below are general in nature and I intend to expound upon these upon questioning at my deposition. I also reserve the right to add to these opinions and form new opinions with additional or new information, such as transcripts of completed depositions of Rockhill Insurance Company's adjuster, corporate representative, underwriting representative, plaintiffs Public Adjuster and Rockhill Insurance Company's "expert" who inspected the property.

Nowhere in the insurance policy issued by Rockhill Insurance Company does it instruct the insured on how to make an insurance claim. Rather they are instructed only on what they must do in the event of loss or damage:

> **6. DUTIES OF THE NAMED INSURED IN THE EVENT OF LOSS OR DAMAGE**
> You must see that the following are done in the event of loss or damage to covered property:[6]

Part of these duties are prompt notice to the insurance company. In response to this notice Rockhill Insurance Company establishes a claim and assigns representatives to investigate those damages giving rise to loss, evaluate whether those damages are covered under the policy and if covered determine the

---

[3] Deposition of Philip Ambrose, pg. 43 lines 20-22
[4] GlobalPro correspondence dated March 27, 2018
[5] Deposition of Philip Ambrose, pg. 96 lines 10-12
[6] Coverage Form CAT7011 (01/16)

extent of the policy's monetary response. If the investigation determined that no payment is warranted, or the payment falls below the deductible a corresponding position paper is issued citing the position and the basis upon which the position was determined.

1. Rockhill Insurance Company, in issuance of the policy and acceptance of First Notice of Loss created an expectation that they would adjust the reported loss. Rockhill Insurance Company has failed to adjust the loss despite being aware, as early as September 20, 2017 that the loss exceeded the deductible.[7]

> 11 **Q. Following your initial inspection, did you**
> 12 **make a determination whether or not the claim fell**
> 13 **above or below the deductible in this case?**
> 14 A. Yes.
> 15 **Q. Did you determine that the claim fell**
> 16 **above the deductible?**
> 17 **MS. LEVY:** That, you can answer.
> 18 A. Yes.
> 19 **Q. Okay. And you did that without writing an**
> 20 **estimate?**
> 21 A. Yes.

2. Rockhill Insurance Company mislead St. Louis Condominium Association, Inc. by creating an expectation of payment for that loss it (Pesak) had determined was in excess of the deductible and then not paying for that loss in accordance with the terms and conditions of the policy.

3. Insurance Adjusting is regulated by the Florida Department of Financial Services (DFS). As such the DFS issues guidelines for adjusters to follow in the performance of their job-related duties. These guidelines are found in the Florida Administrative Code (FAC) as cited in part:

> '**69B-220.201 Ethical Requirements for All Adjusters and Public Adjuster Apprentices.**
>
> (1) Definitions.
>
> > (a) "Adjuster," when used without further specification, includes all types and classes of insurance adjusters, (company employee, independent, and public), subject to chapter 626, F.S., regardless of whether permanent, temporary, apprentice, or emergency licensees.
> >
> > (b) "Department" means the Florida Department of Financial Services.
> >
> > (c) "Person" includes natural persons and legal entities.

---

[7] Deposition of Stephen Pesak, pg. 92 lines 11 - 21

(2) Violation.

(a) Violation of any provision of this rule shall constitute grounds for administrative action against the licensee.

(b) A breach of any provision of this rule constitutes an unfair claims settlement practice.

(3) Code of Ethics. The work of adjusting insurance claims engages the public trust. An adjuster shall put the duty for fair and honest treatment of the claimant above the adjuster's own interests in every instance. The following are standards of conduct that define ethical behavior, and shall constitute a code of ethics that shall be binding on all adjusters:

(a) An adjuster shall not directly or indirectly refer or steer any claimant needing repairs or other services in connection with a loss to any person with whom the adjuster has an undisclosed financial interest, or who will or is reasonably anticipated to provide the adjuster any direct or indirect compensation for the referral or for any resulting business.

(b) An adjuster shall treat all claimants equally.

1. An adjuster shall not provide favored treatment to any claimant.

2. An adjuster shall adjust all claims strictly in accordance with the insurance contract.

(c) An adjuster shall not approach investigations, adjustments, and settlements in a manner prejudicial to the insured.

(d) An adjuster shall make truthful and unbiased reports of the facts after making a complete investigation.

(e) An adjuster shall handle every adjustment and settlement with honesty and integrity, and allow a fair adjustment or settlement to all parties without any compensation or remuneration to himself or herself except that to which he or she is legally entitled.

(f) An adjuster, upon undertaking the handling of a claim, shall act with dispatch and due diligence in achieving a proper disposition of the claim.

(g) An adjuster shall not negotiate or effect settlement directly or indirectly with any third-party claimant represented by an attorney, if the adjuster has knowledge of such representation, except with the consent of the attorney. For purposes of this subsection, the term "third-party claimant" does not include the insured or the insured's resident relatives.

(h) An adjuster shall not advise a claimant to refrain from seeking legal advice, nor advise against the retention of counsel or the employment of a public adjuster to protect the claimant's interest.

(i) An adjuster shall not attempt to negotiate with or obtain any statement from a claimant or witness at a time that the claimant or witness is, or would reasonably be expected to be, in shock or serious mental or emotional distress as a result of physical, mental, or emotional trauma associated with a loss. The adjuster shall not conclude a settlement when the settlement would be disadvantageous to, or to the detriment of, a claimant who is in the traumatic or distressed state described above.

(j) An adjuster shall not knowingly fail to advise a claimant of the claimant's claim options in accordance with the terms and conditions of the insurance contract.

(k) An adjuster shall not undertake the adjustment of any claim concerning which the adjuster is not currently competent and knowledgeable as to the terms and conditions of the insurance coverage, or which otherwise exceeds the adjuster's current expertise.

(l) No person shall, as a company employee adjuster or independent adjuster, represent him- or herself or any insurer or independent adjusting firm against any person or entity that the adjuster previously represented as a public adjuster.

These administrative codes shall be referenced in the following conclusions (3 through 7):

3. (continued) Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have violated the public trust in their collective failure to properly investigate, evaluate and determine benefits due.[8]

4. Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due under the policy of insurance have not treated the assured equally in that Rockhill Insurance Company representatives have recognized the loss exceeds the deductible and have failed to make payment on the claim.[9]

5. Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have failed to adjust the claim. 1 year has passed and no payments have been issued despite the fact that Rockhill Insurance Company representatives have recognized the loss exceeds the deductible.[10]

---

[8] FAC paragraph 3
[9] FAC paragraph 3(b)
[10] FAC paragraph3(b) 2

6.  Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have approached the adjustment of the claim in a manner prejudicial to the insured, in that no adjustment or payments have been made.[11]

7.  Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have not adjusted the claim in a timely manner. Over 1 year has elapsed since the date of loss and no disposition has been attempted.[12]

8.  Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due have failed to advise the insured of their claim options under the policy.[13]

9.  Individuals assigned by Rockhill Insurance Company to investigate, evaluate and determine benefits due routinely failed to acknowledge written communications despite statutory requirements to do so.[14]

10. By failing to pay monies due under the insurance contract, Rockhill Insurance Company has constructively denied the claim without conducting a reasonable investigation, despite statutory requirements that it do so.[15]

11. Rockhill Insurance Company has failed to advise the insured of additional information it requires in order to complete its investigation and the reasons for such information.[16]

12. Rockhill Insurance Company has failed to pay undisputed amounts of the loss despite statutory requirements that it do so.[17]

13. The adjustment of this loss does not meet industry standards for the adjustment of property losses.


Signed: _____

    William S Coffman, Jr.

    10/1/2018


---

[11] FAC paragraph 3(c)
[12] FAC paragraph 3(f)
[13] FAC paragraph 3(j)
[14] Florida Statutes 626.9541 (i) 3.c
[15] Florida Statutes 626.9541 (i) 3.d
[16] Florida Statutes 626.9541 (i) 3.g,h
[17] Florida Statutes 626.9541 (i) 4

## Expert Report of William S. Coffman, Jr.

### ST. LOUIS CONDOMINIUM ASSOCIATION, INC., a Florida not-for profit Corporation

### vs.

### ROCKHILL INSURANCE COMPANY

## Qualifications and Experience

I have worked in the insurance industry for over 34 years as an adjuster and loss consultant. Throughout this period, I have held key positions with Hartford Insurance and am currently an independent adjuster providing claims services to the insurance industry.  I have broad experience in claim handling and claim management and hold special expertise in the adjustment of large property claims.  Based on my experience of adjusting and advising on claims throughout the United States, I have specialized knowledge regarding the industry standards applicable to insurers and insurance adjusters.

## Background

The St. Louis Condominium Association consists of a thirty-one (31) story building containing 134 units, flat roof systems, multi-story parking garage/parking deck, and an in-ground pool and pool deck that was constructed in 1995.[1] The condominium sustained damage from Hurricane Irma, which made landfall in the Florida Keys as a Category 4 storm on September 10, 2017. The eye of the storm tracked along the west coast of Florida reaching Naples as a category 2 storm. Winds from Hurricane Irma affected the east coast as well with a wind gust of 109 mph being recorded in Pembroake Pines, FL.[2]

St. Louis Condominium Association, Inc. retained the services of Globalpro Recovery, Inc. to advise and assist with the presentation of their loss. Globalpro Recovery, Inc. reported the loss to Rockhill Insurance Company on or about September 13, 2018.  Rockhill Insurance Company set up a claim and assigned Engle Martin Associates to investigate. Engle Martin Associates assigned the claim to Stephen Pesak, Executive General Adjuster.  An initial inspection by Mr. Pesak was conducted on or about September 20, 2017

From September 20, 2017 until January 16, 2018 neither Rockhill Insurance Company nor agents acting on its behalf made any requests for information or inspections.

Rockhill Insurance Company engaged the services of an engineer, Mr. Bert Davis and a building consultant, Mr. Paul Millard. An inspection (which was the second one performed on behalf of Rockhill

---

[1]   Post Hurricane Irma Engineering Evaluation of the St. Louis Condominium Association, Miami Florida, prepared by: The Falcon Group Engineering, Architecture & Energy Consultants 7430 SW 48th Street Miami, FL 33155
[2] ibid

Insurance Company) by Mr. Davis and Mr. Millard took place on or about January 31, 2018. At this this inspection no adjuster from the insurance company attended despite requesting this reinspection. A third inspection occurred on February 28, 2018 and a fourth inspection occurred on March 1, 2018. These last two inspections were performed by Mr. Davis and Mr. Millard. Also present during these inspections was Mr. Ambrose and the insurer's attorney Ms. Levy. [3]

At some point prior to the January 31, 2018 inspection Engle Martin reassigned the investigation of the claim to Philip Ambrose, Sr. Executive General Adjuster.

A Sworn Statement in Proof of Loss was submitted to Rockhill Insurance Company via letter dated February 13, 2018, in the amount of $16,113,648.88.

Suit was filed on or about March 5, 2018.

As of this report no denial letters have been issued, no loss less than the deductible letters have been issued and no payments (partial or full) have been made.

As of September 12, 2018, no estimates have been prepared by or on behalf of Rockhill Insurance Company. [4]


## Opinions and Conclusions

The conclusions enumerated below are general in nature and I intend to expound upon these upon questioning at my deposition. I also reserve the right to add to these opinions and form new opinions with additional or new information, such as transcripts of completed depositions of Rockhill Insurance Company's adjuster, corporate representative, underwriting representative, plaintiffs Public Adjuster and Rockhill Insurance Company's "expert" who inspected the property.

Nowhere in the insurance policy issued by Rockhill Insurance Company does it instruct the assured on how to make an insurance claim. Rather they are instructed only on what they must do in the event of loss or damage:

> **6. DUTIES OF THE NAMED INSURED IN THE EVENT OF LOSS OR DAMAGE**
> You must see that the following are done in the event of loss or damage to covered property: [5]

Part of these duties are prompt notice to the insurance company. In response to this notice Rockhill Insurance Company establishes a claim and assigns representatives to investigate those damages giving rise to loss, evaluate whether those damages are covered under the policy and if covered determine the extent of the policy's monetary response. If the investigation determined that no payment is warranted

---

[3] Globalpro correspondence dated March 27, 2018
[4] Deposition of Philip Ambrose, pg. 96 line s 10-12
[5] Coverage Form CAT7011 (01/16)

or the payment falls below the deductible a corresponding position paper is issued citing the position and the basis upon which the position was determined.

1. Rockhill Insurance Company, in issuance of the policy and acceptance of First Notice of Loss created an expectation that they would adjust the reported loss. Rockhill Insurance Company has failed to adjust the loss despite being aware, as early as September 20, 2018 that the loss exceeded the deductible.[6]

> 11 **Q. Following your initial inspection, did you**
> 12 **make a determination whether or not the claim fell**
> 13 **above or below the deductible in this case?**
> 14 A. Yes.
> 15 **Q. Did you determine that the claim fell**
> 16 **above the deductible?**
> 17 **MS. LEVY:** That, you can answer.
> 18 A. Yes.
> 19 **Q. Okay. And you did that without writing an**
> 20 **estimate?**
> 21 A. Yes.

2. Rockhill Insurance Company mislead St. Louis Condominium Association, Inc. by creating an expectation of payment for that loss it (Pesak) had determined was in excess of the deductible and then not paying for that loss in accordance with the terms and conditions of the policy.

3. Insurance Adjusting is regulated by the Florida Department of Financial Services (DFS). As such the DFS issues guidelines for adjusters to follow in the performance of their job-related duties. These guidelines are found in the Florida Administrative Code (FAC) as cited in part:

> '**69B-220.201 Ethical Requirements for All Adjusters and Public Adjuster Apprentices.**
>
> (1) Definitions.
>
> > (a) "Adjuster," when used without further specification, includes all types and classes of insurance adjusters, (company employee, independent, and public), subject to chapter 626, F.S., regardless of whether permanent, temporary, apprentice, or emergency licensees.
> >
> > (b) "Department" means the Florida Department of Financial Services.
> >
> > (c) "Person" includes natural persons and legal entities.
>
> (2) Violation.

---

[6] Deposition of Stephen Pesak, pg. 92 lines 11 - 21

(a) Violation of any provision of this rule shall constitute grounds for administrative action against the licensee.

(b) A breach of any provision of this rule constitutes an unfair claims settlement practice.

(3) Code of Ethics. The work of adjusting insurance claims engages the public trust. An adjuster shall put the duty for fair and honest treatment of the claimant above the adjuster's own interests in every instance. The following are standards of conduct that define ethical behavior, and shall constitute a code of ethics that shall be binding on all adjusters:

(a) An adjuster shall not directly or indirectly refer or steer any claimant needing repairs or other services in connection with a loss to any person with whom the adjuster has an undisclosed financial interest, or who will or is reasonably anticipated to provide the adjuster any direct or indirect compensation for the referral or for any resulting business.

(b) An adjuster shall treat all claimants equally.

　　1. An adjuster shall not provide favored treatment to any claimant.

　　2. An adjuster shall adjust all claims strictly in accordance with the insurance contract.

(c) An adjuster shall not approach investigations, adjustments, and settlements in a manner prejudicial to the insured.

(d) An adjuster shall make truthful and unbiased reports of the facts after making a complete investigation.

(e) An adjuster shall handle every adjustment and settlement with honesty and integrity, and allow a fair adjustment or settlement to all parties without any compensation or remuneration to himself or herself except that to which he or she is legally entitled.

(f) An adjuster, upon undertaking the handling of a claim, shall act with dispatch and due diligence in achieving a proper disposition of the claim.

(g) An adjuster shall not negotiate or effect settlement directly or indirectly with any third-party claimant represented by an attorney, if the adjuster has knowledge of such representation, except with the consent of the attorney. For purposes of this subsection, the term "third-party claimant" does not include the insured or the insured's resident relatives.

(h) An adjuster shall not advise a claimant to refrain from seeking legal advice, nor advise against the retention of counsel or the employment of a public adjuster to protect the claimant's interest.

(i) An adjuster shall not attempt to negotiate with or obtain any statement

St. Louis - Plaintiff's Expert - William Coffman, Jr.'s File - 000010

from a claimant or witness at a time that the claimant or witness is, or would reasonably be expected to be, in shock or serious mental or emotional distress as a result of physical, mental, or emotional trauma associated with a loss. The adjuster shall not conclude a settlement when the settlement would be disadvantageous to, or to the detriment of, a claimant who is in the traumatic or distressed state described above.

(j) An adjuster shall not knowingly fail to advise a claimant of the claimant's claim options in accordance with the terms and conditions of the insurance contract.

(k) An adjuster shall not undertake the adjustment of any claim concerning which the adjuster is not currently competent and knowledgeable as to the terms and conditions of the insurance coverage, or which otherwise exceeds the adjuster's current expertise.

(l) No person shall, as a company employee adjuster or independent adjuster, represent him- or herself or any insurer or independent adjusting firm against any person or entity that the adjuster previously represented as a public adjuster.

These administrative codes shall be referenced in the following conclusions (2 through 7):

2. (continued) Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have violated the public trust in their collective failure to properly investigate, evaluate and determine benefits due.[7]

3. Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due under the policy of insurance have not treated the assured equally in that Rockhill Insurance Company representatives have recognized the loss exceeds the deductible and have failed to make payment on the claim.[8]

4. Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have failed to adjust the claim. 1 year has passed and no payments have been issued despite the fact that Rockhill Insurance Company representatives have recognized the loss exceeds the deductible.[9]

5. Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have approached the adjustment of the claim in a manner prejudicial to the insured, in that no adjustment or payments have been made.[10]

---

[7] FAC paragraph 3
[8] FAC paragraph 3(b)
[9] FAC paragraph3(b) 2
[10] FAC paragraph 3(c)

6.  Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have not adjusted the claim in a timely manner. Over 1 year has elapsed since the date of loss and no disposition has been attempted.[11]

7.  Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due have failed to advise the insured of their claim options under the policy.[12]

8.  Individuals assigned by Rockhill Insurance Company to investigate, evaluated and determine benefits due routinely failed to acknowledge written communications despite statutory requirements to do so.[13]

9.  By failing to pay monies due under the insurance contract, Rockhill Insurance Company has constructively denied the claim without conducting a reasonable investigation, despite statutory requirements that it do so.[14]

10. Rockhill Insurance Company has failed to advise the insured of additional information it requires in order to complete its investigation and the reasons for such information.[15]

11. Rockhill Insurance Company has failed to pay undisputed amounts of the loss despite statutory requirements that it do so.[16]

12. The adjustment of this loss does not meet industry standards for the adjustment of property losses.


Signed: _____

William S Coffman, Jr.

10/1/2018

---

[11] FAC paragraph 3(f)
[12] FAC paragraph 3(j)
[13] Florida Statutes 626.9541 (i) 3.c
[14] Florida Statutes 626.9541 (i) 3.d
[15] Florida Statutes 626.9541 (i) 3.g,h
[16] Florida Statutes 626.9541 (i) 4

Invoice

William S Coffman, Jr.

1025 94th Street

Apt 2

Bay Harbor Islands, FL 33154

252-320-2164

St Louis Condominium Association, Inc  vs  Rockhill Insurance Company

| Retainer | | Retainer Amount | | |
|---|---|---|---|---|
| | Initial Retainer | | | |
| | Additional Retainer | | | |
| | Total Retainer Received | | $0.00 | |

| Hourly Charge | Non-Trial | | $175.00 | |
|---|---|---|---|---|
| | Trial and Trial Prep | | $250.00 | |

| Date | Description of Work | Time | Charges | Balance Against Retainer |
|---|---|---|---|---|
| 9/29/2018 | Review emails and depositio | 3 | $525.00 | -$525.00 |
| 9/30/2018 | Review emails and depositio | 4 | $700.00 | -$1,225.00 |
| 10/1/2018 | Prepare Report | 2 | $350.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | | | $0.00 | -$1,575.00 |
| | Retainer Balance | | | -$1,575.00 |
| | Retainer Balance Check | 9 | $1,575.00 | -$1,575.00 |

**Amount Due**           **$1,575.00**

*William S. Coffman: Claims Appraised*

| Year | Title | Acted In Capacity | Status |
|------|-------|-------------------|--------|
| 2003 | Shulman v Liberty Mutual | Insured Appraiser | Went To Umpire |
| 2003 | Shulman v Liberty Mutual | Insured Appraiser | Went To Umpire |
| 2005 | Cid v American Summit | Insured Appraiser | Went To Umpire |
| 2005 | Johnson v Liberty American | Insured Appraiser | Settled With Appraiser |
| 2006 | Langly v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Bulbin v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Kupfer v Sentry | Insured Appraiser | Settled With Appraiser |
| 2007 | Montgomery v Balboa | Umpire | Went To Umpire |
| 2007 | Shulman V Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Snug Harbor Condo v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Spitzer v Safeco Insurance | Insured Appraiser | Went To Umpire |
| 2007 | Tavares v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | Tavares v Citizens | Insured Appraiser | Settled With Appraiser |
| 2007 | New Paseos Condo v State Farm | Insured Appraiser | Settled With Appraiser |
| 2008 | Levine v Citizens | Insured Appraiser | Went To Umpire |
| 2008 | Carmelo v Citizens | Umpire | Settled With Appraiser |
| 2008 | Gray v Citizens | Umpire | Settled With Appraiser |
| 2008 | Milby v Citizens | Umpire | Went To Umpire |
| 2008 | Poli v FIGA | Insured Appraiser | Settled With Appraiser |
| 2008 | Valle v Pacific Insurance | Insured Appraiser | Went To Umpire |
| 2009 | Kramer v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Lind v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Castillo v Citizens | Insured Appraiser | Umpire Award |
| 2009 | Palmetto Center v C.N.A. | Insured Appraiser | Litigation |
| 2009 | Brown v Citizens | Insured Appraiser | Litigation |
| 2009 | Axe v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Gelper v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Greenwald v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Itzkowitz v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Logvin v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Messinger v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Michon v Hartford | Insured Appraiser | Umpire Award |
| 2009 | C. Rubin v Hartford | Insured Appraiser | Umpire Award |
| 2009 | M. Rubin v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Rothstein v State Farm | Insured Appraiser | Umpire Award |
| 2009 | Salzberg v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Schenker v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Sulzer v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Weinrich v Hartford | Insured Appraiser | Umpire Award |
| 2009 | Weiss v Hartford | Insured Appraiser | Settled With Appraiser |
| 2009 | Vila v Tower Hill | Insured Appraiser | Went To Umpire |
| 2009 | Ready v Tower Hill | Insured Appraiser | In Process |
| 2009 | Crystal Greens Condo v Travelers | Company Appraiser | Went To Umpire |
| 2009 | Holy Theotokos Monestary v Church Mutual | Company Appraiser | Went To Umpire |
| 2009 | Bether AME Church - Deerfield Beach v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 | Betherl AME Church - Indian River v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 | Chomat v Liberty Mutual | Insured Appraiser | Settled With Appraiser |
| 2009 | Goihman v FIGA | Insured Appraiser | Litigation |
| 2009 | House of God v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 | House of God - Miami v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2009 | Mt Sinai Baptist Church v Church Mutual | Company Appraiser | Settled With Appraiser |

## *William S. Coffman: Claims Appraised*

| 2009 | Miracle By Faith v Church Mutual | Company Appraiser | Settled With Appraiser |
|------|----------------------------------|-------------------|------------------------|
| 2009 | Mount Zion Arcadia v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2010 | St. Nicholas Monestary v Church Mutual | Company Appraiser | Settled With Appraiser |
| 2010 | St Paul AME v Church Mutual | Company Appraiser | Settled With Appraiser |

*William S. Coffman: Claims Appraised*

**Award Amount**
$168,000.00
$200,000.00
$72,125.00
$291,889.10
$50,836.84
$33,470.66
$76,640.70
$27,000.00
$65,000.00
$839,424.70
$94,466.81
$61,527.79
$26,326.00
$1,279,000.00
$63,000.00


$37,500.00
$438,482.18
$46,233.11
$35,264.63
$63,286.94

$402,835.81
$38,160.36
$29,687.93
$28,884.92
$36,332.00
$26,685.77
$20,189.95
$30,653.23
$16,689.16
$14,927.00
$40,450.00
$49,854.20
$32,012.04
$33,546.88
$30,202.44
$48,752.29
$5,683.25
$233,240.66
$198,811.00
$246,573.00



$79,959.39

$96,707.51

*William S. Coffman: Claims Appraised*

$43,000.00
$84,163.91

| Year | Title | Approximate Value |
|------|-------|-------------------|
| 1996 | Cardinal Realty | $8,000,000 |
| 1996 | St. Regis | $7,900,000 |
| 1996 | Wrightsville Dunes COA | $1,900,000 |
| 1996 | Shell Island | $1,500,000 |
| 1996 | Ocean Dunes | $2,450,000 |
| 2001 | Prime Real Estate | $275,000 |
| 2001 | Ms. Hannah S | $254,000 |
| 2003 | Ms. Gilliam D | $275,000 |
| 2003 | Atrium COA | $318,000 |
| 2004 | Meridian COA | $845,000 |
| 2005 | Johnson v Liberty American | $291,889.10 |
| 2005 | 3360 Condominium | $3,500,000 |
| 2007 | New Paseos Condo v State Farm | $1,279,000.00 |
| 2007 | Snug Harbor Condo v Citizens | $839,424.70 |
| 2008 | Valle v Pacific Insurance | $438,482.18 |
| 2009 | Brown v Citizens | $402,835.81 |
| 2009 | Ready v Tower Hill | $233,240.66 |
| 2009 | Crystal Greens Condo v Travelers | $198,811.00 |
| 2009 | Holy Theotokos Monestary v Church | $246,573.00 |

St. Louis - Plaintiff's Expert - William Coffman, Jr.'s File - 000018

## Expert Work

| Year | Attorney | Case | Capacity Depo/Trial | Notes |
|---|---|---|---|---|
| 2009 | Arrian Niemen-Arkin, Mintz Truppman   Miami FL | Brown v Citizens Property Insurance Company | Deposition | Called in capacity as appraiser for Brown. Testified as to damages and how they were determined |
| 2011 | Kenneth Duboff,   Law Offices of Kenneth Duboff Miami, FL | Salzman v Sunshine State Insurance Company | Deposition | Performed IR inspection for Salzman in 2008. Called to provide testimony regarding IR findings |
| 2012 | Matthew Sekits, esq Bullivant Houser Bailey Seattle, Wa | REM Market v Argonaut Great Central | Deposition | Testified in capacity of claims expert on claims handling and industry standards |
| 2012 | Mark Mintz,   Mintz Truppman   Miami FL | Atlantic Hospitality of Florida, LLC v General Starr Insurance Company | Deposition | Reviewed files, provided verbal opinion. Deposed |
| 2012 | Leo Manzanilla, Manzanilla Schwartz Miami FL | American Verterinary v American Casualty Company Of Reading, PA | Claims Expert | Provided policy analysis and damage analysis. |
| 2012 | Matthew Sekits, esq Bullivant Houser Bailey Seattle, Wa | Occupational Medical Clainic of Tacoma v Hartford Insurance Group | Claims Expert | Reviewed files, provided verbal opinion. Resolved |
| 2013 | Mark Mintz,   Mintz Truppman   Miami FL | Jarrette Bay Investments Corp. v Citizens Property Insurance Corporation | Deposition | Reviewed files, provided verbal opinion. Deposed. Resolved |
| 2014 | Mark Mintz,   Mintz Truppman   Miami FL | Palmetto Bay Investments v.  Citizens Property Insurance Corporation | Deposition | Reviewed files. Deposed. Resolved |
| 2014 | Mark Mintz,   Mintz Truppman   Miami FL | Antares v Lloyds | Deposition | Reviewed files. Deposed. Resolved |
| 2014 | Germain Law Group Adrian Nieman-Arkin | Bay Towers Condominium Association | Claims Expert | Inspected Loss |
| 2015 | Mintz Truppman | Sosa Saurez v. Liberty Mutual Insurance Company | Claims Expert | Reviewed Files. Provided written report. |
| 2018 | Mark Mintz,   Mintz Truppman   Miami FL | Brickellhouse Condominium Association v Hartford Steam Boiler | Deposition | Reviewed Files. Provided written report. Deposition |
| 2018 | Mark Mintz,   Mintz Truppman   Miami FL | Washington v. Florida Peninsula Insurance | Claims Expert | Reviewed files. |

St. Louis - Plaintiff's Expert - William Coffman, Jr's File - 000019

## Lourdes Artigas

| | |
|---|---|
| **From:** | Dania Brady |
| **Sent:** | Tuesday, October 02, 2018 5:00 PM |
| **To:** | 'Jocelyn Engracio' |
| **Cc:** | 'Lauren Levy'; 'Lourdes Artigas'; 'Michael Metta'; Susan Catania Odess; Engie Tapia; Docketing Clerk |
| **Subject:** | SERVICE OF COURT DOCUMENTS - St. Louis Condominium Association, Inc. v Rockhill Insurance Company - Case No. 18-cv-21365-CIV-WILLIAMS/TORRES |
| **Attachments:** | 2180128. Plaintiff's Supplemental Expert Witness Disclosures.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Good afternoon,

Below is a link with the supplemental exhibits mentioned in our Supplemental Expert Witness Disclosures. Thank you.

https://srhl-law.sharefile.com/d-s8d21c3173604f458

| | |
|---|---|
| **Court in which proceeding is pending:** | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA- MIAMI DIVISION |
| **Case Number:** | 1:18-cv-21365-KMW |
| **Name of initial party on each side:** | ST. LOUIS CONDOMINIUM ASSOCIATON, INC. V. ROCKHILL INSURANCE COMPANY |
| **Document served:** | • Plaintiff's Supplemental Expert Witness Disclosures |
| **Sender's Name & Telephone Number:** | Susan C. Odess, Esq. 305-442-3334 |

**Dania Brady**
Legal Assistant to:
Susan C. Odess and Daniel Jovanov
Siegfried, Rivera, Hyman, Lerner,
De La Torre, Mars & Sobel, P.A.
201 Alhambra Circle, Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-3334 Ext 385 ● Fax: 305-446-8727
www.srhl-law.com ● dbrady@srhl-law.com

Follow us on: Facebook ● Twitter ● LinkedIn ● Youtube



This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby

1