# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 18-21365-Civ-WILLIAMS/TORRES

ST. LOUIS CONDOMINIUM
ASSOCIATION, INC.,

     Plaintiff,

v.

ROCKHILL INSURANCE COMPANY,

     Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION TO STRIKE
## AND *DAUBERT* MOTION TO EXCLUDE DEFENDANT'S EXPERTS

This matter is before the Court on St. Louis Condominium Association, Inc.'s motion to strike and *Daubert* motion to exclude Rockhill Insurance Company's ("Defendant") experts. [D.E. 116]. Defendant responded to Plaintiff's motion on January 11, 2019 [D.E. 138] to which Plaintiff replied on January 18, 2019. [D.E. 151]. Therefore, Plaintiff's motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **DENIED**.[1]

## I. BACKGROUND

Plaintiff filed this action on March 5, 2018 in Florida state court and Defendant removed it on April 6, 2018 based on diversity jurisdiction. This case is a

---

[1] On January 28, 2019, the Honorable Kathleen Williams referred Plaintiff's *Daubert* motion to the undersigned Magistrate Judge for disposition. [D.E. 158].

property insurance coverage dispute pursuant to an insurance policy that Defendant issued to Plaintiff. The policy relates to a property located at 800 Claughton Island Drive, Miami, Florida 33131 (the "Property") for the period of December 31, 2016 to December 31, 2017. The policy provided insurance coverage in the amount of twenty million dollars. Because of Hurricane Irma, Plaintiff alleges that that the Property sustained significant damage and that Defendant failed to cover the damages as required under the policy.

## II.   APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589).[2] The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts";

---

[2]    Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying

4

the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### III.   ANALYSIS

Plaintiff's motion seeks to exclude five of Defendant's experts, including Bert Davis, ("Mr. Davis"), Brian Warner ("Mr. Warner"), Paul Millard ("Mr. Millard"), Janine Pardee ("Ms. Pardee"), and Irving Oppenheim ("Mr. Oppenheim").  Plaintiff argues that Mr. Davis and Mr. Warner must be excluded because they reached their conclusions without performing a single test that enables them to provide a reliable opinion.  Instead, Plaintiff asserts that Mr. Davis and Mr. Warner simply concluded that they did not observe any damage to the building.  Plaintiff also seeks to exclude Mr. Millard, Ms. Pardee, and Mr. Oppenheim because they failed to comply with the Federal Rules of Civil Procedure.   Neither Ms. Pardee nor Mr. Oppenheim

purportedly submitted a signed expert report and Plaintiff alleges that Mr. Millard failed to submit a complete report.   Defendant contends, on the other hand, that Plaintiff's motion fails for a variety of reasons.   We will consider the parties' arguments in turn.

### A.   *Whether Mr. Davis Should be Excluded*

First, Plaintiff seeks to exclude Mr. Davis because he is unqualified to testify as to causation.   Defendant requested Mr. Davis to determine whether wind speeds damaged the roof system, windows, and doors of the condominium.   Plaintiff argues, however, that there is nothing in Mr. Davis' areas of specialization[3] that qualifies him to opine on causation.   Plaintiff also contends that, even if Mr. Davis appears qualified on paper as a specialist in "failure analysis" and "moisture intrusion," Mr. Davis did not perform a single test to support his opinions.   Therefore, Plaintiff concludes that Mr. Davis is unqualified because he cannot testify competently on the matters he is expected to address at trial.

An expert may be qualified to testify in multiple ways: "'by knowledge, skill, experience, training, or education'" and "not necessarily unqualified simply because her experience does not precisely match the matter at hand."   *Furmanite Am., Inc. v. T.D. Williamson, Inc.,* 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing *Maiz,* 253 F.3d at 665, 669).   "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in

---

[3]      Mr. Davis' areas of specialization include failure analysis, indoor air quality, moisture intrusion, construction and industrial accidents, slip and fall accidents, ventilation and air conditioning systems, life safety systems, plumbing systems, fire protection systems, electrical systems, lighting systems, construction claims, explosions, building fires, and code compliance.

light of the subject matter of the proposed testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Wellcome, Inc.,* 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)).  "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *City of Tuscaloosa,* 158 F.3d at 562–63).

Determining an expert's qualifications is not a stringent inquiry "and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations omitted); *see also Johnson v. Big Lots Stores, Inc.,* 2008 WL 1930681, *14 (E.D .La. Apr. 29, 2008) (summarizing *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 507 n. 10 (5th Cir. 1999), as "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"); *see also Martinez v. Altec Indus., Inc.,* 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005) (quoting *Rushing,* 185 F.3d at 507 ("As long as some reasonable indication of qualifications is adduced . . . qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity")). After a review of the relevant issues and an expert's qualifications, "the determination regarding qualification to testify rests within the district court's discretion." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *Berdeaux v. Gamble Alden Life Ins. Co.,* 528 F.2d 987, 990 (5th Cir. 1976) (footnote omitted)).

7

Applying these principles, we are unconvinced that Mr. Davis is unqualified to serve as an expert in this case because he has (1) multiple engineering licenses, (2) a bachelors degree in mechanical engineering, (3) a masters' degree in civil engineering, (4) experience in structural, mechanical, and electrical engineering, and (5) a specialty in residential buildings with moisture damage.  If one couples Mr. Davis' experience with the fact that courts routinely allow civil engineers to opine on causation and the extent of property damage due to hurricanes, Plaintiff's motion to exclude Mr. Davis as unqualified is **DENIED**.  *See Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661–62 (S.D. Fla. 2012) ("This is not surprising, as assessing structure-related damages to a building would seem to be a natural fit with the training and experience that a professional civil engineer has.") (citing *Broussard v. State Farm Fire & Cas.,* 523 F.3d 618, 631 (5th Cir. 2008) (affirming district court" ruling allowing structural engineer to testify that storm surge and not hurricane-force winds caused damage); *see also Traveler Indem. Co. of Conn. v. Centimark Corp.,* 2010 WL 3431159, *2 (S.D. Fla. Aug. 30, 2010) (finding licensed engineer qualified to provide expert opinion that installation of roofing system was faulty).

Next, Plaintiff seeks to exclude Mr. Davis because his report (the "Davis Report") provides no reliable methodology to determine if wind speeds damaged the condominium.  Plaintiff claims that Mr. Davis simply performed visual inspections of the property and noted areas that he deemed damages.  Mr. Davis then purportedly failed to perform any testing of the roof system, windows, and doors.

And making matters worse, Plaintiff alleges that the conclusions in the Davis Report are hopelessly contradictory. Therefore, Plaintiff concludes that Mr. Davis should be excluded because his opinions are based entirely on speculation.

"The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically valid." *Id*. at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include the following:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

Plaintiffs objects to the methodology that Mr. Davis used in determining whether Hurricane Irma caused the damage to the condominium. But, Plaintiff's contention is unpersuasive because Mr. Davis (1) reviewed meteorological data, (2) made a visual inspection of the building, and (3) inspected the units where water damage was present. Mr. Davis also conducted measurements, opened sliding glass doors and windows, observed physical evidence, consulted public records, and relied on his thirty years of experience. While Plaintiff disagrees with the methodology

used, "the issue for a *Daubert* methodology challenge is not what it was possible for an expert to do, but rather what it was reasonably necessary for an expert to do in order for his opinions to be reliable." *Travelers Prop. Cas. Co. of Am. v. All-S. Subcontractors*, Inc., 2018 WL 1787884, at *7 (S.D. Ala. Apr. 13, 2018).

We therefore agree with other courts that have considered this issue in that "an engineer's use of techniques of visual inspection, code review, and reliance on experience and expertise can satisfy the *Daubert* reliability prong." *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 664 (S.D. Fla. 2012) (finding that a structural engineer's "experience as an engineer and his visual inspection of the Property . . . lay a permissible foundation" for his opinions as to causation of roof damage).[4]   Plaintiff essentially invites the Court to weigh the evidence presented, but "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence;" rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

---

[4]      *See also Kirksey v. Schindler Elevator Corp.*, 2016 WL 5213928, *11 (S.D. Ala. Sept. 21, 2016) (finding no *Daubert* problem with industrial engineer's methodology in visually inspecting escalator guardrail without performing testing or analysis of its structural strength); *Nicholson v. Pickett*, 2016 WL 854370, *9-11 (M.D. Ala. Mar. 4, 2016) (finding expert's methodology sufficiently reliable, despite lack of testing, where expert visually inspected vehicle, reviewed depositions, films and reports, and relied on his experience in the industry); *Holman v. State Farm Fire and Cas. Co.*, 2015 WL 12803770, *7 (N.D. Ala. Jan. 12, 2015) (finding that an expert's "methodology is sufficiently reliable" when it is based on "first-hand inspection" of a house and applied "knowledge and experience of structural engineering to reach his conclusion" as to cause of cracks in basement wall); *Sparger v. Newmar Corp.*, 2014 WL 3928556, *5 (S.D. Fla. Aug. 12, 2014) ("visual inspection of an engine may be an acceptable way of identifying an engine defect for purposes of evaluating admissibility of expert testimony," even where expert did not perform any "intrusive diagnostic procedure");

10

admissible evidence." *Quiet Tech*, 326 F.3d at 1341 (citation omitted).; *see also Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1188 (9th Cir. 2002) ("Vigorous cross-examination of a study's inadequacies allows the jury to appropriately weigh the alleged defects and reduces the possibility of prejudice."); *Cummings v. Standard Register Co.,* 265 F.3d 56, 65 (1st Cir. 2002) (holding that "whatever shortcomings existed in [the expert's] calculations went to the weight, not the admissibility, of the testimony"). Therefore, Plaintiff's motion to exclude Mr. Davis and his opinions is **DENIED** because Plaintiff's objections go to the weight, rather than the admissibility, of Mr. Davis' opinions.

Plaintiff's final argument to exclude Mr. Davis is that his testimony will not assist the trier of fact because his opinions do nothing to understand the issues presented in this case – whether Hurricane Irma caused the building, windows, and door systems to fail. Plaintiff claims, for example, that Mr. Davis made no inquiry into how water entered the interior of the condominium and that he merely relied on a visual inspection that the building did not look damaged. Because Mr. Davis has no helpful testimony as to whether Hurricane Irma compromised the building, window, and/or door systems, Plaintiff concludes that any evidence, opinion, or testimony related to Mr. Davis should be excluded.

Expert testimony is helpful to the trier of fact only "if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262; *see also King v. Cessna Aircraft Co.,* 2010 WL 1980861, \*5 (S.D. Fla. May 18, 2010). In other words, "[p]roffered expert testimony generally will not help the trier

11

of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63 (citing 4 *Weinstein's Fed. Evid.* § 702.03[2][a] ). Moreover, where an expert opinion has a tendency to confuse the trier of fact, it may not satisfy the helpfulness prong. *See Frazier,* 387 F.3d at 1258.    Finally, "[b]ecause of the powerful and potentially misleading effect of expert evidence," judges must take care not to allow misleading and prejudicial opinions to influence the finder of fact. *See id.* at 1263; *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.,* 402 F.3d 1092, 1111 (11th Cir. 2005) (citing *Frazier,* 387 F.3d at 1263).

Here, Mr. Davis meets the helpfulness prong under *Daubert* because his experience and visual inspections of the condominium will inform the trier of fact as to the potential causes for the damages to the condominium.  Plaintiff, of course, disagrees because Mr. Davis failed to conduct specifics tests that may have better informed his opinions.    But, Plaintiff's argument does not undermine the helpfulness of Mr. Davis nor does it belittle his opinions to that of an average layperson.  This means that – while Mr. Davis' opinions may contain certain defects – they do not rise to the level of being unhelpful and therefore Plaintiff's motion to strike Mr. Davis is **DENIED**.

### B.    *Whether Mr. Warner Should be Excluded*

The second issue is whether Mr. Warner should be excluded as unreliable and unhelpful to the trier of fact.[5]   Plaintiff argues that Defendant retained Mr.

---

[5]    While Plaintiff's motion to exclude Mr. Warner under *Daubert* lacks merit, Mr. Warner may not serve as an expert in this case because Defendant violated the Court's Scheduling Order as set forth in the Court's Order granting in part and denying in part Plaintiff's motion to strike Defendant's experts.

Warner to determine if there was any wind damage to window openings, sliding glass doors, and the storefront/curtain wall at the elevator lobby.   But, Plaintiff claims that Mr. Warner's report is unreliable because it is merely a field observation that lacks a single test to determine if water intruded the condominium.   Plaintiff also takes issue, for example, with Mr. Warner's visual inspections and his related opinions because they are conclusions with no reliable methodology.  Making matters worse, Plaintiff points out that neither Mr. Warner's report nor the record presented provide a factual basis to conclude that the observed damages existed at the condominium before the hurricane.

In addition to an unreliable methodology, Plaintiff argues that Mr. Warner's testimony will not assist the trier of fact because the report includes nothing more than factual and legal conclusions that lawyers present in closing arguments. Plaintiff suggests that Mr. Warner's testimony has the potential to confuse and mislead the jury because it has no bearing on the state of the condominium prior to Hurricane Irma.   Plaintiff therefore concludes that any evidence, opinion, or testimony of Mr. Warner should be excluded.

Plaintiff's arguments fail for many of the same reasons set forth above because Mr. Warner took a similar approach as Mr. Davis in determining whether the damages at the condominium were hurricane-related.  For example, Mr. Warner reviewed the documents of record and personally inspected many of the sliding glass doors and windows at the condominium.  While Mr. Warner did not conduct any scientific tests of the building, any potential flaws in his report go to the weight

of his opinions as opposed to their admissibility.   And "[t]he identification of such flaws . . . is precisely the role of cross-examination." *Quiet Tech*, 326 F.3d at 1345 (citing *Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")).   Plaintiff's argument as to Mr. Warner's helpfulness are also unconvincing because his report includes his observations – as opposed to factual and legal conclusions – that lawyers present at closing arguments.   Therefore, Plaintiff's motion to exclude Mr. Warner under *Daubert* is **DENIED**.[6]

### C.   *Whether Mr. Oppenheim and Ms. Pardee Should be Excluded*

Plaintiff's next argument is that Mr. Oppenheim and Ms. Pardee should be excluded because neither submitted a *signed* expert report in violation of Rule 26. Plaintiff alleges that only Mr. Davis' signature appears on the Davis Report even though Mr. Oppenheim and Ms. Pardee agree with the opinions included therein. Plaintiff states that Mr. Oppenheim provided input to the report and that Ms. Pardee inspected the property but that it is entirely unclear which opinion belongs to which expert.   Because of the uncertainty on each expert's opinion, Plaintiff concludes that both Mr. Oppenheim and Ms. Pardee should be excluded.

Federal Rule of Civil Procedure 26(a)(2)(B)(i) provides that a written expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."   An expert witness has a duty to supplement

---

[6]    Again, Mr. Warner has been struck on other grounds, as per the Court's Order on Plaintiff's motion to strike.

his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Exclusion is also appropriate pursuant to Rule 16(b), which 'authorizes the district court to control and expedite pretrial discovery through a scheduling order' and which gives the court 'broad discretion to preserve the integrity and purpose of the pretrial order,' including the exclusion of evidence as a means of enforcing the pretrial order." *Buxton v. Lil' Drug Store Prods., Inc.*, 2007 WL 2254492, at *7 (S.D. Miss. Aug. 1, 2007), *aff'd*, 294 F. App'x 92 (5th Cir. 2008) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990)).

When a party fails to comply with Rule 26, the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless. *See* Fed. R. Civ. P. 37(c)(1); *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (explaining that compliance with Rule 26's expert disclosure requirements is "not merely aspirational"), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (affirming order striking expert for not properly disclosing the scientific bases for his expert opinion in a timely

15

manner); *United States v. Batchelor-Robjohns*, 2015 WL 1761429, at *2 (S.D. Fla. June 3, 2005) (granting motion to strike expert's report and excluding expert from testifying and explaining that "Rule 37(c)(1) requires absolute compliance with Rule 26(a), in that it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified.") (internal quotations omitted).

The determination of whether a party's failure is substantially justified or harmless lies within the "broad discretion" of the Court. *Abdulla v. Klosinski,* 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012).   In determining whether to allow an untimely expert report under Rule 37(c)(1), the Court considers: (1) the unfair prejudice or surprise of the opposing party, (2) that party's ability to cure the surprise, (3) the likelihood and extent of disruption to the trial, (4) the importance of the evidence, and (5) the offering party's explanation for its failure to timely disclose the evidence. *See Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC,* 845 F. Supp. 2d 1241, 1250–51 (M.D. Fla. 2012).

Plaintiff's argument is now moot – as it concedes in its reply – because Rockhill admits that Ms. Pardee and Mr. Oppenheim's opinions are identical to that of Mr. Davis.   That is, Defendant states in its response that the three experts should not be permitted to testify differently as to the opinions in the Davis Report and that all of their opinions are identical.   The facts of this case are therefore analogous to a Tenth Circuit decision where a plaintiff complained on appeal of the district court's refusal to strike a joint expert report that the defendant filed.   The

Tenth Circuit rejected the motion to strike because – even though the experts failed to sign the expert report – they were each prepared to testify as to all the opinions in the report:

> We see no reason to think the practice always and inherently impermissible, as Mr. Barker seems to suppose. Co-authored expert reports aren't exactly uncommon. Here, Mr. Prescott and Mr. Oveson reviewed the same materials and, working together, came to the same opinions. Because they were both prepared to testify to all the opinions in the report, we see no reason why it would be inherently impermissible for them to file a joint report. Perhaps the practice could prove problematic in other circumstances–if, for example, it isn't clear whether both experts adhere to all of the opinions in the report and they do not delineate which opinions belong to which expert–but Mr. Barker identifies no reason to fear such confusion here.

*Dale K. Barker Co., P.C. v. Valley Plaza*, 541 F. App'x 810, 815 (10th Cir. 2013) (citations omitted).

The same reasoning applies to the facts of this case because the opinions of Mr. Davis, Ms. Pardee, and Mr. Oppenheim are identical. This alleviates Plaintiff's concern that the opinions of the experts may differ in some respects and that Plaintiff may be blindsided at trial. *See Dan v. United States,* 2002 WL 34371519, at *2–3, *5 (D.N.M. Feb. 6, 2002) (rejecting joint report that included collective and individual opinions but didn't identify an individual expert). Therefore, Plaintiff's motion to exclude the opinions of Mr. Davis, Ms. Pardee, and Mr. Oppenheim is **DENIED as moot**.[7]

### D. *Whether Mr. Millard Should be Excluded*

---

[7]     Having denied Plaintiff's motion for this reason, this Order does not address whether the trial court will permit the three experts to testify at trial because Defendant has the burden of establishing that the experts' testimony is not cumulative or redundant.

Next, Plaintiff argues that the opinions of Mr. Millard should be stricken because his expert report includes a "preliminary" estimate for damages:

> This is a [p]reliminary estimate for damages, identified during our 1/31, 2/28, 3/1 site inspections, related to Hurricane Irma (9/10/2017). Some further adjustments may be required with the submission of engineering reports, service invoices or repair proposals. Some unit pricing within this estimate may have been changed to represent actual field/market conditions.
>
> This estimate is not inclusive of emergency services, structural drying or initial cleanup. The estimate is subject to further changes with new information/documentation, updated investigations, insurance coverage/liomits of coverage or requirements from the local building municipality.

[D.E. 104-1 at 44]. Plaintiff asserts that a preliminary report fails to comply with Rule 26(a)(2)(B) because the Federal Rules require a complete statement and do not allow a party to file an incomplete preliminary report. Instead, Plaintiff maintains that an expert report must be complete so that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998) (citing *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir. 1995)); *see also In re Fla. Cement & Concrete Antitrust Litig.,* 2011 WL 13174537, at *3 (S.D. Fla. Nov. 17, 2011) ("Many courts have determined that 'preliminary' reports do not comply with Rule 26(a)(2)(B).") (citations omitted).

Plaintiff's argument is unpersuasive because, while Mr. Millard provided a preliminary estimate of damages, this is not a case where the underlying opinion is

subject to change before trial.  Mr. Millard merely stated that he considered the evidence presented at the time and that if there were changed circumstances going forward, this may impact the estimate of damages that were based on his observations from a three-day inspection.  More importantly, Mr. Millard did not submit a preliminary report; it was merely a preliminary estimate of damages – meaning there is no concern that Plaintiff will be ambushed at trial.  For these reasons, Plaintiff's motion to exclude Mr. Millard is **DENIED**.

### *IV.   CONCLUSION*

For the foregoing reasons, Plaintiff's motion to strike and *Daubert* motion to exclude is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of March, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge