# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 18-21365-Civ-WILLIAMS/TORRES

ST. LOUIS CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

v.

ROCKHILL INSURANCE COMPANY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
## ON DEFENDANT'S COUNTERCLAIM FOR DECLARATORY JUDGMENT

This matter is before the Court on St. Louis Condominium Association, Inc.'s ("Plaintiff") motion for partial summary judgment as to liability for breach of contract against Rockhill Insurance Company ("Defendant") and on Defendant's counterclaim for declaratory judgment. [D.E. 118]. Defendant responded to Plaintiff's motion on January 4, 2019 [D.E. 133] to which Plaintiff replied on January 11, 2019. [D.E. 145]. Therefore, Plaintiff's motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion should be **DENIED**.[1]

---

[1] On January 28, 2019, the Honorable Kathleen Williams referred Plaintiff's motion for summary judgment to the undersigned Magistrate Judge for disposition. [D.E. 158].

1

## I.  BACKGROUND

Plaintiff filed this action on March 5, 2018 in Florida state court and Defendant removed it on April 6, 2018 based on diversity jurisdiction.  This case is a property insurance coverage dispute pursuant to an insurance policy that Defendant issued to Plaintiff.  The policy relates to a property located at 800 Claughton Island Drive, Miami, Florida 33131 for the period of December 31, 2016 to December 31, 2017.  The policy provided insurance coverage in the amount of twenty million dollars.

On September 10, 2017, Hurricane Irma made landfall in South Florida and caused damage to the property with wind gusts of up 109 mph in Pembroke Pines, Florida.  Plaintiff reported to Defendant on September 13, 2017 that the property suffered damages.  Defendant conducted an inspection of the property one week later and re-inspected the property on January 31, 2018.  Plaintiff then submitted a proof of loss form on February 13, 2018 and Defendant sought additional items to make a coverage determination on February 20, 2018.  Because Defendant failed to pay for repairs to the property within the time allotted under the policy agreement and Florida law, Plaintiff concludes that Defendant is liable for breach of contract.

## II.  APPLICABLE PRINCIPLES AND LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must
> support the assertion by: (A) citing to particular parts of materials in
> the record, including depositions, documents, electronically stored
> information, affidavits or declarations, stipulations (including those
> made for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or (B) showing that materials cited do not
> establish the absence or presence of a genuine dispute, or that an
> adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56 (c)(1).  "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592–94)).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  In making this determination,

the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III. ANALYSIS

Plaintiff's motion seeks partial summary judgment against Defendant as to liability on its breach of contract claim because Defendant failed to comply with the terms of the underlying policy agreement. That is, Plaintiff argues that Defendant is liable for the damages sustained due to Hurricane Irma and that there is no admissible evidence to conclude otherwise. Plaintiff also maintains that Defendant's counterclaim for declaratory judgment fails because there is no genuine issue of material fact that Defendant breached the policy agreement. Instead, Plaintiff contends that the record evidence demonstrates that Plaintiff voluntarily provided reports, estimates, a proof of loss form[2], and four opportunities for Defendant to inspect the property. Because there is no evidence that Defendant's counterclaim has any merit, Plaintiff concludes that it is entitled to partial summary judgment.

---

[2]     Plaintiff claims that it submitted a proof of loss form to Defendant on February 13, 2018 and that this established a loss within the terms of the policy agreement. Once Plaintiff established a loss within the terms of the policy, Plaintiff states that the burden was on Defendant to prove that the loss arose from a cause which was expected or to prove that the loss was not covered.

**A.   *Whether Plaintiff is Entitled to Partial Summary Judgment on its Breach of Contract Claim***

The first issue is whether Plaintiff is entitled to partial summary judgment for Defendant's breach of the underlying policy agreement.  Plaintiff argues that it is only required to prove its breach of contract claim by a preponderance of the evidence and that this constitutes three elements – (1) a contract, (2) a material breach, and (3) damages.  Plaintiff contends that the first element is met because it is undisputed that Defendant issued a twenty-million-dollar commercial property insurance policy and that Plaintiff paid premiums on it for wind-related damages. Once Plaintiff provided notice that the condominium suffered damages, Plaintiff alleges that Defendant had a contractual and statutory duty to conduct a full and complete investigation to determine whether benefits were payable.

Plaintiff argues, however, that Defendant breached the policy agreement when it failed to prepare an estimate or otherwise determine the value of Plaintiff's insurance claim.  Plaintiff alleges that Defendant breached the policy because – after Defendant determined that the hurricane claim was covered under the windstorm policy and fell above the deductible – Defendant was required under the loss payment provision of the policy to take one of four actions within thirty days:

(1) Pay the value of lost or damaged property,
(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below,
(3) Take all or any part of the property at an agreed or appraised value, or
(4) Repair, rebuild, or replace the property with other property of like kind and quality, subject to b. below

> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.
> . . .
> *We will give notice of our intentions within 30 days after we receive the sworn proof of loss.*

[D.E. 118] (emphasis added).   Because Defendant failed to do any of the above, Plaintiff concludes that Defendant breached the policy agreement and should be liable for breach of contract.

Plaintiff also alleges that Defendant violated Florida law because it requires Defendant to pay or deny Plaintiff's claim within ninety days from the receipt of a claim pursuant to Fla. Stat. § 627.70131.  The statute provides, in relevant part, the following:

> Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment.  Any payment of an initial or supplemental claim or portion of such claim made 90 days after the insurer receives notice of the claim, or made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, bears interest at the rate set forth in s. 55.03.  Interest begins to accrue from the date the insurer receives notice of the claim.   The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy.   If there is a right to prejudgment interest, the insured shall select whether to receive prejudgment interest or interest under this subsection.  Interest is payable when the claim or portion of the claim is paid.  Failure to comply with this subsection constitutes a violation of this code.  However, failure to comply with this subsection does not form the sole basis for a private cause of action.

Fla. Stat. § 627.70131.  Plaintiff claims that – at the time of its motion for summary judgment – it had been one year and three months since Plaintiff notified

Defendant of its insurance claim.  Yet, Plaintiff argues that Defendant has still failed to confirm or deny coverage and that this provides conclusive evidence that Defendant breached the policy agreement.[3]

Defendant's response is that Plaintiff violated the policy agreement in at least three ways.  First, Defendant alleges that Plaintiff refused Defendant's request for an inspection and that this hindered its investigation of Plaintiff's insurance claim.  Second, Defendant argues that Plaintiff failed to provide documents that Defendant requested in writing on February 20, 2018, including (1) the minutes of the meetings for Plaintiff's board of directors, (2) the identity and date of the painting contractor who last painted the property, and (3) the records of prior maintenance and repairs for aluminum and sliding glass door unites. Defendant suggests that Plaintiff's failure to provide these documents was inexcusable because Plaintiff was required to maintain these items under Florida law as the condominium's official records.  Third, Defendant contends that Plaintiff filed suit before complying with the the policy's conditions and before Defendant had an opportunity to complete its investigation.  For these reasons, Defendant concludes that it has been materially prejudiced and that Plaintiff's failure to

---

[3]      Plaintiff's motion references Florida's Administrative Code and Defendant assumed in its response that Plaintiff sought summary judgment on a violation of this statutory provision.  However, Plaintiff clarified in its reply that it was not alleging a violation of the administrative code at this time.  Plaintiff merely included the provision to show that it was incorporated into the policy agreement and that Defendant failed to comply with both a contractual and statutory duty. Therefore, we need not consider whether Defendant violated Florida's Administrative Code.

comply with the policy agreement defeats Plaintiff's motion for partial summary judgment.

We begin with Plaintiff's initial argument that – after Defendant admitted that Plaintiff's loss was covered under the policy agreement[4] – Defendant failed to adjust and pay Plaintiff for the covered loss with one of the four options provided under the loss payment provision of the contract. Plaintiff states that Defendant breached the agreement as early as December 13, 2017 when it failed to pay or deny Plaintiff's loss within 90 days of the notice of loss. Plaintiff's argument lacks merit, however, because even if Defendant admitted that the alleged damages were covered under the policy, Plaintiff – by its own admission – did not provide a sworn *proof of loss* form until February 7, 2018. [D.E. 120-7]. This undermines Plaintiff's contention that Defendant breached the agreement in December 2017 because the policy explicitly states that Defendant "will give notice of our intentions within 30 days after we receive the sworn proof of loss." [D.E. 112-1]. If Plaintiff failed to submit a proof of loss form until February 13, 2018 (as it concedes its motion) and merely submitted a notice of loss in September 2017, Defendant had no obligation to give notice of its intentions under the policy. As such, Defendant could not have breached the agreement in December 2017 because that predates the submission of Plaintiff's proof of loss form that Plaintiff submitted in February 2018.

---

[4]     Defendant appears to dispute this contention, but for our purposes Plaintiff's motion fails for many other reasons that we need not resolve this factual dispute. We therefore assume for the sake of argument that Defendant admitted that Plaintiff's losses were covered.

Alternatively, Plaintiff alleges that Defendant breached the policy agreement on February 20, 2018 when Defendant denied Plaintiff's insurance claim. This contention is unpersuasive for several reasons. First, Defendant did not deny Plaintiff's insurance claim on that date. [D.E. 120-8]. Defendant merely sent a letter advising Plaintiff that "there is a possibility that coverage may not apply, either in whole or part," and that the property damages presented may be the result of pre-existing damage. [D.E. 120-9]. Defendant then stated that its evaluation of Plaintiff's claim was ongoing, and that additional inspections and documents were needed before a final determination could be made. This means that Plaintiff's contention – that Defendant denied insurance coverage on that date – is unsupported in the record.

At best, Defendant may have breached the agreement three weeks after February 13, 2018 (if one adopts Plaintiff's interpretation of how the policy agreement operates) because that would have been thirty days after Defendant's receipt of Plaintiff's proof of loss form. Plaintiff does not make that argument, however, nor is it clear that Defendant's intentions must be made at the same time as the payment or repair of the property. In fact, the policy agreement suggests otherwise because subsection g provides two options for payment of the alleged loss or damage. [D.E. 8-1]. The first occurs within thirty days if Plaintiff has complied with all the terms of coverage and Defendant has reached an agreement with Plaintiff on the amount of the loss. The second option for payment or repair occurs if Plaintiff has complied with the terms of the policy and an appraisal award has

been made.  Yet, there is no evidence in the record that any of these conditions had been met at the time Defendant sent Plaintiff a letter on February 20, 2018.  This means that – even if we adopted Plaintiff's contention that Defendant denied Plaintiff's insurance claim on February 20, 2018 – Defendant could not have breached the agreement on that date because the conditions set forth above had not been satisfied.

A final reason Plaintiff's argument is unconvincing is because it conflates the thirty-day time frame for Defendant to provide notice of its intentions with the requirement to pay or repair Plaintiff for its losses.  Plaintiff appears to assume that Defendant is required to pay for the alleged losses within thirty days of the date Plaintiff submits its proof of loss.  But, the policy merely states that Defendant need only give notice of its intentions within thirty days after it receives Plaintiff's proof of loss.  In other words, nothing in the agreement requires Defendant to also pay or repair the property on the same date that it makes known its intentions.  If Plaintiff's position was correct, it would nullify the requirements in subsection g because that provision requires an agreement on the amount of loss, compliance with the terms of coverage, and/or an appraisal award.   Because there is no support in the record for Plaintiff's position that Defendant breached the policy agreement in December 2017 or February 2018, Plaintiff's initial argument lacks merit.

Plaintiff's second argument is that Fla. Stat. § 627.70131 is incorporated into the policy agreement and that Defendant violated this provision when it failed to pay or deny Plaintiff's insurance claim within ninety days from the date Plaintiff

submitted its notice of loss on September 13, 2017. That is, Plaintiff alleges that Defendant should have paid or denied Plaintiff's claim on December 13, 2017 and that Defendant's failure to do so constitutes a violation of Florida law. Plaintiff's argument lacks merit, however, because the statute requires an insurer to pay or deny a claim within ninety days unless the failure "*is caused by factors beyond the control of the insurer* which reasonably prevent such payment." Fla. Stat. § 627.70131 (emphasis added). Defendant alleges that Plaintiff failed to comply with its obligations under the policy agreement with an insufficient production of documents and a lack of inspections of the property. Defendant also claims that Plaintiff failed to comply with its duties as the named insured and that this materially prejudiced Defendant's ability to adjust Plaintiff's claim. Plaintiff, of course, disputes this contention because Defendant should have had enough documents to make a coverage determination and that Defendant inspected the property on four separate occasions. This is ultimately an issue of fact for a jury to decide because Defendant has adduced evidence that there were factors beyond its control that required it to pay Plaintiff's insurance claim within ninety days. As such, Plaintiff's motion for partial summary judgment should be **DENIED**.[5]

---

[5]    We also note that, even if Defendant violated Fla. Stat. § 627.70131, the only penalty for an insurer's failure to pay a claim within ninety days is prejudgment interest – not summary judgment as to liability.

### B.   *Whether Plaintiff is Entitled to Summary Judgment on Defendant's Counterclaim and Affirmative Defenses*

Next, Plaintiff argues that it is entitled to summary judgment on Defendant's counterclaim[6] and affirmative defenses because Defendant relies on unsupported allegations with no admissible evidence.  Plaintiff claims, for example, there is no admissible evidence – much less clear and convincing evidence – to find that Plaintiff concealed or made intentional misrepresentations of a material fact.  Plaintiff also argues that Defendant's counterclaim lacks merit because "[w]hen [an] insurance company relies on [a] misrepresentation to avoid a policy the misrepresentation must be conclusively shown."  *Gulf Life Ins. Co. v. Shelton*, 155 Fla. 586, 588, 21 So. 2d 39, 40 (1945).  Plaintiff describes this as a heavy burden and insists that there is no evidence to find that Plaintiff misrepresented Defendant in any way.  Instead, Plaintiff insists that Defendant breached the policy agreement when it failed to (1) adjust Plaintiff's loss, (2) acknowledge liability to Plaintiff under the commercial property windstorm policy, and (3) pay Plaintiff the amount owed.  Because there is no evidence of a misrepresentation, Plaintiff requests that the Court enter summary judgment in its favor on Defendant's counterclaim and its affirmative defenses.

Plaintiff's arguments fail for many – if not all – of the same reasons set forth above because there is an abundance of conflicting evidence in the record on which party breached the underlying policy agreement.  On one hand, Plaintiff alleges

---

[6]   Defendant's counterclaim is for a declaratory judgment that Defendant complied with the terms of the policy agreement and that it should be relieved of all liability.

12

that it cooperated with Defendant and allowed Defendant to investigate the property on four occasions and that Defendant refused to pay or repair the condominium for the damages suffered during Hurricane Irma.  Defendant, on the other hand, argues that Plaintiff failed to comply with its duties as a named insured and filed this lawsuit without giving Defendant a reasonable amount of time to complete an investigation on Plaintiff's insurance claim.  Defendant claims, for example, that the damages Plaintiff disclosed were below the policy's deductible on September 20, 2017 and skyrocketed to sixteen million dollars on January 4, 2018.

The parties then dispute whether Plaintiff made material misrepresentations and how, if any, this impacts the enforceability of the policy agreement.  While Plaintiff insists that Defendant has no evidence in favor of its counterclaim, the record shows that Plaintiff may have failed to comply with its duties as a named insured or the policy's terms on concealments, misrepresentations, or frauds.  For example, there is evidence (1) that Plaintiff may have concealed $75,000 in repair bills dating back to September 2017, (2) that Plaintiff intentionally withheld documents to hinder Defendant's investigation, and (3) that Plaintiff failed to coordinate inspections to conceal the damages suffered.  [D.E. 111-1, 112-1].  The resolution of these issues cannot be resolved on a motion for summary judgment because it requires the weighing of evidence.  Therefore, Plaintiff's motion for partial summary judgment for its breach of contract claim and on Defendant's counterclaim for declaratory judgment should be **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment [D.E. 118] should be **DENIED**.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 11th day of March, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

14