## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 18-21365-Civ-WILLIAMS/TORRES

ST. LOUIS CONDOMINIUM
ASSOCIATION, INC.,

     Plaintiff,

v.

ROCKHILL INSURANCE COMPANY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

This matter is before the Court on St. Louis Condominium Association, Inc.'s ("Plaintiff") motion for attorneys' fees against Rockhill Insurance Company ("Defendant"). [D.E. 285]. Defendant responded to Plaintiff's motion on September 13, 2019 [D.E. 297] to which Plaintiff replied on September 20, 2019. [D.E. 298]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, Plaintiff's motion for attorneys' fees should be **GRANTED in part** and **DENIED in part**.

### I.   BACKGROUND

Plaintiff filed this action on March 5, 2018 in Florida state court and Defendant removed it on April 6, 2018 based on diversity jurisdiction. This case is a property insurance coverage dispute pursuant to an insurance policy that Defendant

1

issued to Plaintiff.   The policy relates to a property located at 800 Claughton Island Drive, Miami, Florida 33131 for the period of December 31, 2016 to December 31, 2017.   The policy provided insurance coverage in the amount of twenty million dollars.

On September 10, 2017, Hurricane Irma made landfall in South Florida and caused damage to the property with wind gusts of up 109 mph in Pembroke Pines, Florida.   Plaintiff reported to Defendant on September 13, 2017 that the property suffered damages.   Defendant conducted an inspection of the property one week later and re-inspected the property on January 31, 2018.   Plaintiff then submitted a proof of loss form on February 13, 2018 and Defendant sought additional items to make a coverage determination on February 20, 2018.   Because Defendant failed to pay for repairs to the property within the time allotted under the policy agreement and Florida law, Plaintiff filed this action for breach of contract.

## II.   ANALYSIS

Plaintiff's motion seeks $2,187,049.80 in attorneys' fees, consisting of a lodestar of $1,093,524.90 and a 2.0 multiplier.   Plaintiff claims that its attorneys spent 3,007.69 hours litigating this case and the requested fee award is appropriate because of the exceptional results obtained.   Plaintiff also argues that the hourly rates requested are reasonable and that its attorneys exercised practical billing judgment in avoiding duplicative tasks.   Defendant contends, on the other hand, that Plaintiff's motion should be denied for at least three reasons because: (1) the

2

time entries presented are redundant and/or vague, (2) the rates requested are excessively high, and (3) there is no evidence that Plaintiff had any difficulty obtaining competent counsel to justify the use of a fee multiplier.   We will consider each argument in turn.

### A.      *Plaintiff's Entitlement to Attorneys' Fees*

Before we consider the amount of fees that should be awarded, we must begin with the question of entitlement.   Plaintiff argues that the issue of entitlement is undisputed because, under Florida law, Plaintiff may recover its reasonable attorneys' fees:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Fla. Stat. § 627.428.

"Under Florida law, an insured who prevails against an insurer is entitled to reasonable attorneys' fees on appeal.   This right to attorneys' fees is applicable in federal courts sitting in Florida."   *Blasser Bros. v. N. Pan-Am. Line*, 628 F.2d 376, 386 (5th Cir. 1980) (citations omitted); *see also Danis Indus. Corp. v. Ground Improvement Techniques, Inc.*, 645 So. 2d 420, 421 (Fla. 1994) ("[T]he statute is a one-way street offering the potential for attorneys' fees only to the insured or beneficiary."); *Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992) ("If the

3

dispute is within the scope of section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees."). Importantly, "a trial court has no discretion to deny reasonable attorney's fee to the prevailing plaintiff where the insurance company first disputes the claim and then settles the case after a lawsuit is filed." *Amador v. Latin American Property and Casualty Insurance Company,* 552 So. 2d 1132, 1133 (Fla. 3d DCA 1989); *see also Tristar Lodging, Inc. v. Arch Speciality Ins. Co.*, 434 F. Supp. 2d 1286, 1295 (M.D. Fla. 2006) ("[T]he law is clear that if Plaintiff was compelled to sue because the insurance company wrongfully caused it to resort to litigation, fees must be awarded if the policy is paid after suit.").

Plaintiff's argument is well taken because there is no dispute that Plaintiff was the insured under the relevant insurance policy and that the Court entered judgment in Plaintiff's favor following a successful jury trial. [D.E. 269]. Defendant also agrees that Plaintiff is entitled to attorneys' fees (albeit via a different Florida statute) and argues that the only question to be decided is whether the amount sought should be reduced because of block billing, duplicative time entries, excessive hourly rates, and the omission of a fee multiplier. [D.E. 297] ("Rockhill does not dispute Plaintiff's entitlement to attorneys' fees under the attorneys' fees statute for surplus lines insurers"). Because there is no dispute between the parties as to the question of entitlement, we turn to the lodestar to determine if the fees requested are reasonable.

4

**B.**   ***The Lodestar Method of Determining Reasonable Fees***

In determining an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.   We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee");   This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed."   *Hensley*, 461 U.S. at 433.   If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly."   *Id*.

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended.   *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005).   Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained."   *Norman*, 836 F.2d at 1302.   Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation."   *Id*. at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and

5

expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).   Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award.   *See Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit.   *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters.   *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award.   This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

## C.   *The Reasonable Hourly Rate*

The first step is to consider the reasonable hourly rate.   This rate is defined as "the prevailing market rate in the relevant legal community for similar services

by lawyers of reasonably comparable skills, experience and reputation." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1299). The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted).   Here, the relevant legal community is South Florida.

   Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).[1]   The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate.   *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in

---

[1]    The 12 *Johnson* factors are as follows:
   (1) the time and labor required;
   (2) the novelty and difficulty of the questions;
   (3) the skill requisite to perform the legal service properly;
   (4) the preclusion of other employment;
   (5) the customary fee;
   (6) whether the fee is fixed or contingent;
   (7) the time limitations imposed by the client or circumstances;
   (8) the amount involved and the results obtained;
   (9) the experience, reputation and ability of the attorneys;
   (10) the undesirability of the case;
   (11) the nature and length of the professional relationship with the client; and
   (12) the awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

similar lawsuits."). Ultimately, the Court remains an expert on the issue of hourly rates in the community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

Here, Defendant agrees that Stuart Sobel ("Mr. Sobel") should be entitled to an hourly rate of $500 per hour. Defendant objects, however, to Susan Odess ("Ms. Odess") seeking an hourly rate of $500.00 per hour because, while she is a partner at a law firm, she barely has seven years of legal experience. Defendant also suggests that her hourly rate should be cut because she did not litigate this case at trial. Instead, Ms. Odess spent most of her time filing duplicative motions for sanctions and participating in onerous discovery disputes. Ms. Odess contends, on the other hand, that her rates are reasonable and that they coincide with the amount she bills in other insurance cases. In addition, Ms. Odess claims that, while she may have only seven years of litigation experience, those years have been significant in that she has obtained several eight figure judgments against insurance companies. Ms. Odess therefore concludes that her success in litigation justifies the rates requested.

We agree with Defendant that an hourly rate of $500 for a seventh-year lawyer is excessive for an insurance case, especially where her primary active role was in the pretrial phase of the case. Instead, she billed 1212.3 hours for pre-trial matters and then cluttered the Court's docket with discovery motions that evidenced

an inexperienced associate as opposed to a seasoned partner.   The rate requested should be reduced even further because this was merely an insurance case – meaning it did not involve highly complex issues of law that would require a $500 per hour junior partner.   *See Beach Bars USA, LLC v. Indem. Ins. Corp. of DC*, 2015 WL 11422318, at *3 (S.D. Fla. May 6, 2015), *Report and Recommendation adopted*, 2015 WL 11401351 (S.D. Fla. July 31, 2015) ("[F]ee awards in insurance coverage cases are materially different from awards in complex commercial litigation, for instance.").

The Court will therefore reduce the hourly rate of Ms. Odess to $325 per hour. *See Beach Bars USA, LLC*, 2015 WL 11422318, at *4 ("[W]e find that based upon our expertise in [insurance litigation] a $350.00 hourly rate is the most that can be awarded . . . for this type of case.   Arguably, even that rate may be on the high side"); *see also CBS Broadcasting, Inc. v. Browning,* 2007 WL 2850527 (S.D. Fla. Sept. 21, 2007) (holding that a reasonable partner rate ranges between $350–550 per hour); *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1268-71 (M.D. Fla. 2010) (reducing an experienced insurance litigator's requested hourly rate of $400 to $275).   As for the hourly rates of the other partners who worked on this case, the rates requested are reasonable considering their experience.

The hourly rates requested for Plaintiff's associates must be adjusted, however, because their billable rates do not coincide with their experience.   For example, two first year associates worked on this matter and one of them billed at

$279.22 per hour while the other billed at a rate of $167.14 per hour.   Plaintiff failed to present any justification for this discrepancy.   We therefore recommend that the hourly rates of the two first year associates be consistent at $167.14 per hour.   *See, e.g.*, *Sandin v. United Collection Bureau, Inc.*, 2009 WL 2500408, at *3 (S.D. Fla. Aug. 14, 2009) ("The Court notes that Plaintiffs have presented evidence in support of this hourly rate, and that $175 per hour is reasonable even for a first-year associate.").

Another hourly rate that is not commensurate with an associate's experience is a second year, Ashley Allison ("Ms. Allison"), who worked on this case at a rate of $285 per hour.   This rate is excessive for the South Florida legal market and for insurance cases with only two years of legal experience.   Ms. Allison's rate should therefore be reduced to $200 per hour.   *See Wales-Walden v. Ak "N" Eli, LLC*, 2018 WL 6812692, at *2 (S.D. Fla. Oct. 12, 2018), *Report and Recommendation adopted sub nom. Wales-Walden v. Ak N Eli, LLC*, 2018 WL 6807316 (S.D. Fla. Oct. 29, 2018) ("$300.00 per hour for a second-year associate is excessive.   The Court finds that Ms. Steelman's fee should be reduced to $200.00 per hour."); *see also B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*, 2011 WL 6151507, at *2 (N.D. Fla. Nov. 1, 2011), *Report and Recommendation adopted*, 2011 WL 6152082 (N.D. Fla. Dec. 12, 2011).   The Court agrees with Mr. Shannin's assessment and concludes that the hourly rates for attorney Willis [of $195 and $210 an hour] are reasonable for a first or second year associate practicing in Miami, Florida.").

Having reduced the hourly rates of the associates, we turn to the rates of the non-attorneys.   Plaintiff requests that the paralegals who worked on this case receive an hourly rate of at least $160 because of their substantial litigation experience.   But, even substantial litigation experience does not justify such an inflated hourly rate for a paralegal (especially in an insurance case) in the South Florida legal market.   We therefore reduce the hourly rates of the three paralegals to $75 per hour.   *See Freed By Freed v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2005 WL 8156037, at *6 (S.D. Fla. Aug. 24, 2005) ("[T]he Court considers $75.00 a reasonable hourly rate for the two paralegals"); *see also Kotchman v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 4124845, at *2 (M.D. Fla. Sept. 18, 2017) ("$ 80 per hour for paralegals' time is . . . a reasonable hourly rate.") (citing *Rynd v. Nat'l Mut. Fire Ins. Co.*, 2012 WL 939387, at *1 (M.D. Fla. Jan. 25, 2012), *Report and Recommendation adopted*, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012); *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377 (M.D. Fla. 2010) (reducing a paralegal's hourly rate from $ 110 to $ 65 per hour in an insurance bad faith case)).[2]

### D.   *The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended.   The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary

---

[2]    As for the law clerks who worked on this matter, we need not opine on their requested hourly rates because, as discussed below, their hours should be eliminated entirely as duplicative and unnecessary.

*irrespective of the skill, reputation, or experience of counsel.*" *A.C.L.U. of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).   The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award.   *See A.C.L.U. of Georgia*, 168 F.3d at 428.   If the fee applicant fails to exercise required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* at 428.   As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees.   *See Norman*, 836 F.2d at 1303. Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783).   A court may not, however, do both.   *See Bivins*, 548 F.3d at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours").   In deciding

between the two options available to the Court, an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger*, 10 F.3d at 783 (holding that where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis[; r]ather, . . . it may [] reduce [the hours devoted to litigation] in gross if a review of the resubmitted fee request warrants such a reduction") (emphasis added)).   "In such cases, an across-the-board cut may be appropriate, as long as a court "articulate[s] [its] reasons for selecting specific percentage reductions." *Roy v. Bd. of Cty. Comm'rs, Walton Cty., Fla.*, 2012 WL 8013976, at *4 (N.D. Fla. Nov. 1, 2012), *Report and Recommendation adopted*, 2013 WL 1883247 (N.D. Fla. May 6, 2013) (quoting *Loranger*, 10 F.3d at 783).

Defendant argues that the number of hours requested must be reduced because Plaintiff engaged in block-billing, rendering it impossible to determine if the tasks completed were reasonable.   Most of Defendant's argument takes aim at Plaintiff's counsel, Ms. Odess, because she block-billed for over 500 hours. Defendant requests that a discretionary penalty of up to 30% be imposed for her hours and that, if applicable, the same percentage cut be applied to Plaintiff's entire litigation team.   Defendant also claims that there are several vague or duplicative time entries that must be reduced, including 10 hours for Mr. Sobel, 5 hours for Ms. Odess, and 15 hours for Eyal S. Eisig ("Mr. Eisig").   Defendant complains that these 30 hours cannot stand because the descriptions are hopelessly vague.   [DE. 252-2 at

13

83] (billing for "[i]ssues concerning post trial motions").  Accordingly, Defendant requests that the number of hours billed be reduced because there is an abundance of time entries that are vague, duplicative, and/or block-billed.

We agree that the hours that Defendant identified constitutes improper block-billing[3] and/or vague time entries.  There are many time entries, for example, where Ms. Odess billed more than 12 hours but failed to specify how that time was spent other than a laundry-list of generic tasks.  Some of the most egregious examples are when she drafted unidentified documents or sent emails to unknown recipients for more than 10 hours.  We disagree, however, that a penalty of 30% is appropriate as many courts that have considered this issue have found that a reduction of 5% to 15% to be reasonable.  *See, e.g.*, *BMC Bus. Overseas Corp. v. Incasa LLC*, 2019 WL 1897804, at *2 (S.D. Fla. Feb. 15, 2019), *Report and Recommendation adopted*, 2019 WL 1897678 (S.D. Fla. Feb. 27, 2019) ("[T]he Undersigned finds that a 15% reduction is appropriate in light of the vague entries, block billing, and excess time entries.") (citing *Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc.*, 2013 WL 3816660, at *4 (M.D. Ga. July 22, 2013) (reducing attorney's fees by 5% due to attorney's block billing); *United Food Mart, Inc. v. Motiva Enters., LLC.*, 2006 WL 3068820, at *4 (S.D. Fla. Feb. 8, 2006) (reducing attorney's fees by 10% where

---

[3]     "'Block billing' occurs when an attorney lists all of the day's tasks on a case in a single entry and does not separate the tasks and the time spent working on those individual tasks as separate entries on billing records." *Plumbers & Pipefitters Union No. 421 Health & Welfare Fund.*, 2013 WL 3816660, at *4).

attorney used block billing, the entries were vague, and some entries appeared excessive)).   We therefore conclude that a 10% reduction should be appropriate as to the hours identified in Defendant's response and this equates to a reduction of 50.5 hours for Ms. Odess, 1 hour for Mr. Sobel, and 1.5 hours for Mr. Eisig.[4]

### C.   *Fee Multiplier*

After determining the lodestar . . . the court must determine the necessity of an adjustment for the results obtained."   *Coy v. Allstate Floridian Ins. Corp.*, 2007 WL 1732098, at *8 (M.D. Fla. June 14, 2007) (citing *Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1302 (11th Cir. 1988)).   Florida courts "routinely approve[ ] fees that reward lawyers for pursuing cases that have little chance of success."   *Progressive Express Ins. Co., v. Schultz*, 948 So. 2d 1027, 1032 (Fla. 5th DCA 2007).   In other words, "the riskier the case the greater the multiplier."   *Id.* Unlike federal courts applying federal law that consider lodestar "enhancements" under the stricter rubric of *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 543 (2010), Florida courts applying Florida law apply the risk multiplier based on the need for a contingency fee arrangement coupled with evidence in the record that, without a multiplier, the plaintiffs would have faced substantial difficulties finding counsel in the relevant market.   *See Sun Bank of Ocala v. Ford,* 564 So. 2d 1078, 1079 (Fla.

---

[4]      The number of hours that the law clerks billed in this case should be rejected entirely because there is no reason that this case required the work of 6 partners, 6 associates, 4 paralegals, and 5 law clerks.   The hours billed for the law clerks are either redundant, excessive, clerical, or otherwise non-compensable as Plaintiff employed more than enough legal professionals to prosecute this insurance case.

1990).   Absent such evidence in the record, Florida law does not permit a contingency risk multiplier. *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Corp.,* 465 F. App'x 880, 882 (11th Cir. 2012) ("Because no likely difficulty finding counsel was established, a multiplier was not permissible under Florida law.").

Generally, to determine the necessity of a contingency risk multiplier, Florida courts consider the following three factors:

> 1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel;
>
> 2) whether the attorney was able to mitigate the risk of nonpayment in any way; and
>
> 3) whether any of the factors set forth in *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985), are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

*Standard Guaranty Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990).   For the types of cases at issue here, the Supreme Court found that a multiplier is a useful tool for the category of cases "when a risk of nonpayment is established." *Id.* This "made clear that trial judges are not required to use a multiplier; but when they do, evidence must be 'presented to justify the utilization of a multiplier.'" *Joyce v. Federated Nat'l Ins. Co.,* 228 So. 3d 1122, 1128 (Fla. 2017). As a result, the party seeking the fee need not show that the case represents a "rare" or "exceptional" case to trigger a multiplier. *Id.* at 1128-29, 1131-32.   The trial judge enjoys the necessary flexibility under Florida law to apply different criteria to different categories of cases in arriving at a multiplier finding. *Id.* at 1129 (citing *Quanstrom,* 555 So. 2d at 835).

16

Florida courts have ruled that the first factor is the most important because it concerns a party's difficulty in finding competent counsel without the use of a multiplier. *See, e.g., Sun Bank,* 564 So. 2d at 1079) ("[B]efore adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market") (citation omitted)); *see also Joyce*, 228 So. 3d at 1133 ("the lodestar amount, which awards an attorney for the work performed on the case, is properly analyzed through the hindsight of the actual outcome of the case, whereas the contingency fee multiplier, which is intended to incentivize the attorney to take a potentially difficult or complex case, is properly analyzed through the same lens as the attorney when making the decision to take the case.").

The first factor is lacking, however, because a fee multiplier was not needed to obtain competent counsel for a property damage insurance case and there is no persuasive showing in the record that Plaintiff would have had "substantial difficulty" in obtaining competent counsel given the facts presented.   Indeed, as the number of cases filed in this Court illustrates, a plethora of experienced practitioners routinely pursue insurance cases following hurricanes or other significant causes of loss.   This alone is fatal to Plaintiff's request for a fee multiplier because "[i]f there is no evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, then a multiplier should not be awarded." *USAA Cas. Ins. Co. v.*

*Prime Care Chiropractic Enters, P.A.*, 93 So. 3d 345, 347 (Fla. 2nd DCA 2012) ("although [fee expert] summarily concluded that the market required a multiplier for Prime Care to obtain competent counsel, he did not provide the court with any evidence to support his broad assertion.").

Significantly, here Plaintiff retained a fee expert that provided relevant opinions to the lodestar and multiplier analysis. Like the expert in *Prime Care,* he summarily opined that "the market in the Southern District of Florida requires a contingency fee multiplier to obtain competent counsel in a case like this." [D.E. 285-9 ¶20]. But, this expert also does not provide us with any tangible evidence to support this broad assertion. And certainly the docket of the Southern District of Florida, loaded as it is with hurricane and other property damage cases filed by very competent counsel in contingent fee cases, is prima facie evidence to the contrary. Not to mention the evidence submitted by Defendant's own fee expert that challenges the conclusory opinion with her own factual testimony that, in her experience, she has not seen a single first party coverage case where the attorney did not take the case on a contingency basis. And she correctly points out that just because an hourly fee was not possible does not translate into a finding that a risk multiplier was required beyond a traditional contingency fee arrangement. Notably, zero evidence was submitted by Plaintiff that the other lawyers Plaintiff may have consulted demanded something other than a contingency fee agreement to take the case. Plaintiff's affidavit on that important detail is lacking entirely.

18

So, in sum, this record presents us with no tangible basis to conclude that a risk multiplier was dispositive in a competent lawyer's decision to tackle the case. The evidence is actually to the contrary, or at best in equipoise. Given our discretion on this issue, we find that a risk multiplier is not appropriate so long as the lodestar produces a material and sizable fee given that counsel prevailed in the action, which it will. *See also Florida Peninsula Ins. Co. v. Wagner,* 196 So. 3d 419 (Fla. 2d DCA 2016) (reversing award of multiplier where "[t]here was no showing or finding that without the prospect for a multiplier to an otherwise reasonable fee award, [plaintiffs[would have had difficulty finding competent counsel to represent them in this insurance coverage dispute.").

The second factor considers whether there was an opportunity to mitigate the non-payment of the attorneys' fee. Plaintiff's lawyers accepted this case on a pure contingency basis and incurred a significant risk of non-payment for their services and no opportunity to mitigate non-payment of an attorneys' fee. However, the existence of a contingent fee agreement alone does not mandate the application of a multiplier. *See Sun Bank of Ocala,* 564 So. 2d at 1079. Plaintiff in effect relies on nothing more than that, underscoring why the motion is so unpersuasive.

Finally, the third factor considers other items including the results obtained, and the amount involved in the ligation. Plaintiff was successful at trial and, in consideration of that success, Plaintiff is being awarded a substantial attorneys' fee as stated above. Aside from that, Plaintiff has not identified any other factor that

19

has not been adequately accounted for in the lodestar that requires an enhanced fee. Plaintiff suggests that this involved complex litigation, but this was merely an insurance coverage case. Plaintiff also contends that the superior skills of the lawyers justify an enhanced fee award, but that is unsupported in the record presented. Accordingly, there is no evidence that a fee multiplier is appropriate in this case.

### C. *Final Calculations*

Considering the rates and number of hours expended, the partners who worked on this case should recover the following: (1) Ms. Odess ($325 hourly rate for 1161.8 hours), (2) Mr. Sobel ($500 hourly rate for 249.85), (3) B. Michael Clark ($337.96 hourly rate for 54.95 hours), Jason Rodgers-Da Cruz ($335 hourly rate for 3.5 hours), Nicholas Siegfried ($335 hourly rate for 3 hours), and Helio De La Torre ($360 hourly rate for 3 hours) for a total of $524,338.40. As for the associates, they should recover for the time entries of: (1) Emily Troesch ($335 hourly rate for 205.80 hours), (2) Zachary Smith ($167.14 hourly rate for 205.07 hours), Mr. Eisig ($350 hourly rate for 161.6 hours), Berenice Mottin-Berger ($285 hourly rate for 3.3 hours), Austin Murray ($167.14 hourly rate for 1.4 hours), and Ashley Allison ($200 hourly rate for 1 hour) for a total of $161,152.89.

The final category concerns the paralegals who should recover for the work of: (1) Engie Tapia ($75 hourly rate for 757.63 hours), (2) Michelle Hanchet ($75 hourly rate for 8.85 hours), (3) Heidi Valdes ($75 hourly rate for 1 hour), and Christina

Neyra ($75 hourly rate for 0.45 hours) for a total of $57,594.75. Accordingly, Plaintiff should recover a grand total of $743,086.04.[5]

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's motion for attorneys' fees [D.E. 285] be **GRANTED in part** and **DENIED in part**. Plaintiff should recover a total fee award of $743,086.04.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

---

[5]   Plaintiff also requested that 81.88 hours be included for the work that its attorneys performed from July 10, 2019 to August 9, 2019. But, Plaintiff failed to present its fee request in a manageable or persuasive manner (as Plaintiff did for the other hours requested), nor did Plaintiff provide the Court with a summary of the billing codes attributed to each legal professional. Instead, Plaintiff left it for the Court to rummage through the billing records, compute each attorney's/paralegal's hours, and to calculate the appropriate fee that should be recoverable for each individual. Because the Court has no duty to do the work that Plaintiff should have done in the first place, we will not consider Plaintiff's request for fees to date after July 10, 2019. If Plaintiff is forced to submit a new fee request if it successfully defends the appeal of the judgment, such sums can be included in that supplemental fee request.

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 10th day of

October, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge